[No. 79988-1.   En Banc.]
Argued February 28, 2008.   Decided October 9, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. ERIC G. BAHL, *Petitioner*.

742

*Andrew P. Zinner* (of *Nielsen, Broman & Koch, PLLC*), for petitioner.

*Janice E. Ellis, Prosecuting Attorney,* and *Mary K. Webber, Deputy,* for respondent.

¶1 MADSEN, J. — The defendant argues that he is entitled to bring a preenforcement vagueness challenge to conditions of community custody imposed as part of his sentence. We agree and hold that several of the conditions are unconstitutionally vague. We remand for resentencing.

## FACTS

¶2 Petitioner Eric Bahl was charged with second degree rape, first degree burglary, residential burglary, indecent exposure, and first degree criminal trespass. He was convicted of second degree rape and first degree burglary, and sentenced to the statutory maximum of life in prison and a minimum term within the standard range. The court imposed a community placement term of 18-36 months on the burglary charge. The court also imposed a mandatory life term of community custody on the rape charge, which included the following conditions:

> Do not possess or access pornographic materials, as directed by the supervising Community Corrections Officer. Do not frequent establishments whose primary business pertains to sexually explicit or erotic material.

> Do not possess or control sexual stimulus material for your particular deviancy as defined by the supervising Community Corrections Officer and therapist except as provided for therapeutic purposes.[1]

1 Clerk's Papers (CP) at 28. Bahl objected to these conditions on the ground that there was no evidence to suggest that pornographic materials, erotic materials, or sexual stimulus played any part in his offenses; his counsel stated, "[T]here is simply no evidence that he has ever viewed any of this material." Verbatim Report of Proceedings at 8-9 (July 26, 2005).

¶3 Bahl appealed, arguing, among other things, that the community custody conditions were vague and overbroad.

---

[1] Nothing in the record indicates that, as of the time of sentencing, any particular deviancy had been diagnosed or identified.

The Court of Appeals refused to consider his vagueness challenges because Bahl had not been accused of violating any of the conditions. The Court of Appeals also rejected his overbreadth claim and other arguments, and affirmed the convictions. *State v. Bahl,* 137 Wn. App. 709, 159 P.3d 416 (2007).

## ANALYSIS

¶4 Washington sentencing courts are required to impose certain community custody conditions in specified circumstances and may impose others. RCW 9.94A.712(6)(a)(i), .715(2)(a), .700(4), (5). One condition that may be imposed is that an offender "shall comply with any crime-related prohibitions." RCW 9.94A.700(5)(e). At sentencing Bahl objected to imposition of the challenged conditions on the ground that they were not crime-related, but he does not make this argument to this court. The only issues before the court concern Mr. Bahl's vagueness challenges to the conditions of community custody.

■ ■ ¶5 The State contends Bahl's vagueness challenges should not be reviewed because they were raised for the first time on appeal. Contrary to the State's position, "[i]n the context of sentencing, established case law holds that illegal or erroneous sentences may be challenged for the first time on appeal." *State v. Ford,* 137 Wn.2d 472, 477, 973 P.2d 452 (1999); *see, e.g., State v. Moen,* 129 Wn.2d 535, 543-48, 919 P.2d 69 (1996) (imposition of a criminal penalty that does not comply with sentencing statutes may be raised for the first time on appeal); *State v. Jones,* 118 Wn. App. 199, 204 n.9, 207-08, 76 P.3d 258 (2003) (challenge to sentencing conditions raised for the first time on appeal); *State v. Paine,* 69 Wn. App. 873, 884, 850 P.2d 1369 (1993) (case law has "established a common law rule that when a sentencing court acts without statutory authority in imposing a sentence, that error can be addressed for the first time on appeal"); *State v. Anderson,* 58 Wn. App. 107, 110, 791 P.2d 547 (1990) ("a challenge to a sentence that is contrary

to law may be raised on appeal for the first time"); *see also In re Pers. Restraint of Fleming*, 129 Wn.2d 529, 532, 919 P.2d 66 (1996); *State v. Loux*, 69 Wn.2d 855, 858, 420 P.2d 693 (1966), *overruled in part by Moen*, 129 Wn.2d at 545; *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000); *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). In accord with these authorities, we hold that vagueness challenges to conditions of community custody may be raised for the first time on appeal.

¶6 The next question is whether, as the Court of Appeals held, we should decline to address Mr. Bahl's vagueness challenges because he has not been charged with violating any of the conditions. This issue was raised by the Court of Appeals sua sponte. That court refused to address Bahl's preenforcement challenge, reasoning that in any vagueness challenge, the first question is whether the challenge is facial or as-applied. The court said that even in the case of a facial challenge, a factual record is " 'not unimportant' " because the challenger must show that the challenged rule is impermissibly vague in all of its applications. *Bahl*, 137 Wn. App. at 716 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 182 n.8, 795 P.2d 693 (1990)).[2] The Court of Appeals said that Bahl simply anticipates that he might at some point be accused of engaging in conduct that violates the conditions and that there is no actual conduct or factual record for a court to review. *Id.*

¶7 But as Bahl correctly maintains, courts routinely reach the merits of preenforcement vagueness challenges to sentencing conditions, including Washington courts that have considered such challenges without addressing whether it is proper to do so in the preenforcement setting.

---

[2] This rule applies when a statute that does not implicate constitutional rights is challenged. If a statute "implicates no constitutionally protected conduct," a facial vagueness challenge can succeed only if the statute is "impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). " '[A]ll' " of a statute's " 'applications' " includes application to the challenger, and therefore the factual record of the law's application to the challenger is "not unimportant." *Douglass*, 115 Wn.2d 182 n.8 (quoting *Vill. of Hoffman Estates*, 455 U.S. at 497).

*E.g., State v. Riles*, 135 Wn.2d 326, 347-51, 957 P.2d 655 (1998) (challenges to community placement conditions prohibiting one defendant from having contact with minors or frequenting places where children congregate, and requiring another defendant to make reasonable progress in treatment); *State v. Llamas-Villa*, 67 Wn. App. 448, 836 P.2d 239 (1992) (challenge to condition that the defendant not associate with persons using, possessing, or dealing with controlled substances); *State v. Hearn*, 131 Wn. App. 601, 607-09, 128 P.3d 139 (2006) (challenge to condition that the defendant not associate with known drug offenders); *State v. Autrey*, 136 Wn. App. 460, 466-69, 150 P.3d 580 (2006) (challenges to conditions that the defendants not have sexual contact with anyone without that individual's explicit consent and that the defendants not have sexual contact with anyone without prior approval of their therapists); *accord, e.g., State v. Simpson*, 136 Wn. App. 812, 816-17, 150 P.3d 1167 (2007); *State v. Acrey*, 135 Wn. App. 938, 947-48, 146 P.3d 1215 (2006).

¶8 Courts in other jurisdictions have also considered preenforcement vagueness challenges to sentencing conditions without discussing whether preenforcement review was proper. *E.g., United States v. Paul*, 274 F.3d 155, 165-67 (5th Cir. 2001) (challenge to conditions of supervised release); *United States v. Phipps*, 319 F.3d 177, 192-94 (5th Cir. 2003) (same); *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) (same); *McVey v. State*, 863 N.E.2d 434, 446-50 (Ind. Ct. App. 2007) (challenges to special conditions of probation).

¶9 The leading case addressing a government claim that preenforcement vagueness challenges to sentencing conditions are not reviewable is *United States v. Loy*, 237 F.3d 251 (3d Cir. 2001).[3] In *Loy*, the government asked the court to refrain as a matter of judicial policy from reviewing due

---

[3] *Loy* is particularly apropos since the sentencing condition at issue prohibited the defendant from possessing " 'all forms of pornography, including legal adult pornography.' " *Loy*, 237 F.3d at 253. Here, one of the conditions at issue prohibits Mr. Bahl from possessing or accessing "pornographic materials."

process challenges to conditions of release prior to a violation of those conditions. In addition, and similar to the State's argument in this case, the government argued in *Loy* that "because vagueness challenges may typically only be made in the context of particular purported violations, Loy must wait until he is facing revocation proceedings before he will be able to raise his claim." *Id.* at 256.

¶10 The Third Circuit first observed that federal courts uniformly permit defendants sentenced to probation to challenge the validity of probation conditions on direct appeal and that if a defendant fails to do so, he would likely be found to have waived the right to object. *Id.* at 257; *see United States v. Stine*, 646 F.2d 839, 846 & n.16, 847 (3d Cir. 1981); *United States v. Ofchinick*, 937 F.2d 892 (3d Cir. 1991).

¶11 The court in *Loy* also addressed the prudential ripeness doctrine implicated by the government's arguments pursuant to which a court considers the hardship to the parties if the court does not decide the issue and the fitness of the legal issue for judicial review. *Loy*, 237 F.3d at 257. The Third Circuit reasoned that "the fact that a party may be forced to alter his behavior so as to avoid penalties under a potentially illegal regulation is, in itself, a hardship." *Id.* The court rejected the government's claim that a defendant must "face revocation proceedings before being permitted to challenge his conditions of release," concluding that a defendant does not have to " 'expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.' " *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)).[4]

---

[4] In *Steffel*, the petitioner filed a class action seeking an injunction and declaratory relief, claiming that application of Georgia's criminal trespass law to him if he did not stop distributing anti-Viet Nam War handbills on sidewalks at the exterior of a shopping center would violate his First and Fourteenth Amendment rights. The Court distinguished his case from others where threats of prosecution were characterized as imaginary or speculative, because the petitioner had twice been warned to stop handbilling and was told by police that if he again handbilled at the location and disobeyed a warning to stop, he would

¶12 As to fitness for judicial review, the court noted that the more a question is purely legal and the less that any additional facts would aid in the court's inquiry, the more likely the issue is to be ripe. *Id.* at 258. The court reasoned that whether the proscription on pornography was unconstitutionally vague was purely one of law. Significantly, the court said that nothing about the vagueness challenge would change between the present and the time that the defendant would be released from prison. *Id.* The court said that having a particular allegedly pornographic publication to assess "would not in any way assist in the more general analysis of whether the condition provides Loy with sufficient warning to 'know what is prohibited, so that he may act accordingly' in his day-to-day activities." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). The court said that "[t]he government's approach would have Loy discover the meaning of his supervised release condition only under continual threat of reimprisonment, in sequential hearings before the court. Such an exercise is not necessary, nor will it clarify the issues." *Id.*[5]

¶13 The court rejected the argument that Loy could not be heard until the condition applied to his specific context, expressly finding inapplicable the more stringent standing rules that require an individual to bring a vagueness challenge in the context of an alleged violation or be able to demonstrate that the condition is vague in all applications. *Id.* at 260-61. Among other factors that distinguish the usual vagueness challenge from a challenge to sentencing conditions is the fact that the "law" being challenged is set by the judiciary and criminal sentences are formulated in part through the appellate process. *Id.* at 261.

---

likely be prosecuted. In was in this context that the Court made the statement quoted in *Loy*.

[5] As part of its ripeness analysis, the court in *Loy* also found that Congress intended that appellate courts consider challenges to conditions of supervised release at the time they are imposed rather than in an appeal from a revocation proceeding. *Loy*, 237 F.3d at 258.

¶14 Bahl maintains that the reasoning in *Loy* is equally applicable to his case, focusing in particular on the ripeness analysis in *Loy*. Bahl also cites Washington cases applying a ripeness analysis to determine whether constitutional challenges to conditions were premature. *See State v. Ziegenfuss*, 118 Wn. App. 110, 113-15, 74 P.3d 1205 (2003) (defendant argued her due process rights were violated by imposition of a financial obligation at sentencing because the law governing violation hearings lacked adequate safeguards; argument held not ripe since the defendant was not harmed by the alleged unconstitutionality; the defendant had not yet failed to pay and had not been incarcerated or sanctioned for failure to pay; any imposition of sanctions without inquiry into ability to pay would be unconstitutional); *State v. Massey*, 81 Wn. App. 198, 200-01, 913 P.2d 424 (1996) (the defendant was ordered to submit to searches without language stating search must be based on reasonable suspicion;[6] challenge to this condition held premature until defendant was subjected to a search; regardless of whether reasonableness language was included in the order, the standard for adjudicating a challenge to any search is the same); *State v. Phillips*, 65 Wn. App. 239, 243-44, 828 P.2d 42 (1992) (challenge to imposition of costs; because it is at the point of enforcement of financial obligations that an indigent may assert a constitutional objection to payment on the ground of indigency, any constitutional issues that might be raised regarding payment were not presently ripe for review).

¶15 We agree that, as the Third Circuit's analysis in *Loy* suggests, ripeness is an appropriate doctrine to apply when deciding whether a preenforcement vagueness claim is premature. Applying the ripeness doctrine can help identify the cases where a more developed factual record is necessary before a decision on the constitutionality of sentencing conditions can be made.

---

[6] The court explained that officers must have a well-founded suspicion, not probable cause, to conduct searches of probationers and parolees, and this standard applied in this case. *Massey*, 81 Wn. App. at 200-01.

¶16 The State, however, maintains that when First Amendment rights are not at issue, the court should consider vagueness challenges to conditions only with respect to the challenger's conduct. *See Douglass*, 115 Wn.2d at 181. The State concedes that the condition regarding pornographic materials "arguably" concerns First Amendment rights. It maintains, however, that the court should nevertheless decline to decide the "facial" constitutionality of the conditions, pointing out that the underpinnings to limits on bringing vagueness challenges involve principles of judicial restraint and the limits free a court from unnecessary constitutional pronouncements and premature interpretations of statutes. Even where it is argued that a statute violates the First Amendment, the State contends, the United States Supreme Court avoids facial invalidation when it is unnecessary. Here, the State argues, Bahl is still in custody and may never violate the conditions, and it is unnecessary to resolve his vagueness challenge.

¶17 These arguments relate to whether Bahl has standing to bring a vagueness challenge to the conditions of community custody. *See State v. Farmer*, 116 Wn.2d 414, 420, 805 P.2d 200, 812 P.2d 858 (1991) (criminal defendant must establish standing to challenge the vagueness of a statute; generally, one must claim the statute is vague as to one's own conduct); *see generally City of Tacoma v. Luvene*, 118 Wn.2d 826, 845, 827 P.2d 1374 (1992) (discussing standing to bring facial challenges); *State v. Brown*, 50 Wn. App. 405, 409, 748 P.2d 276 (1988) ("when the challenge asserts that the statute under which the defendant is charged is in its entirety unconstitutionally vague on its face, the challenger has standing"). But a criminal defendant always has standing to challenge his or her sentence on grounds of illegality. *See State v. Riles*, 86 Wn. App. 10, 17, 936 P.2d 11 (1997) (the court proceeded to the merits of the defendant's vagueness challenge to his community placement conditions because his claim was essentially a claim that the sentencing court acted beyond its authority), *aff'd*, 135 Wn.2d 326. Because this is so, the parties'

arguments respecting Bahl's ability to bring a facial vagueness claim are misplaced. In contrast to a constitutional challenge to a statute, the challenge is to sentencing conditions that apply uniquely to an individual defendant, who clearly has standing to challenge them, as terms of his or her sentence, on the basis of claimed illegality.

¶18 For many of the same reasons that the court held in *Loy* that the defendant there could bring his preenforcement vagueness challenge, we hold that a defendant may assert a preenforcement vagueness challenge to sentencing conditions if the challenge is sufficiently ripe. First, as noted, such challenges have routinely been reviewed in Washington without undue difficulty. Second, preenforcement review can potentially avoid not only piecemeal review but can also avoid revocation proceedings that would have been unnecessary if a vague term had been evaluated in a more timely manner. Third, not only can this serve the interest of judicial efficiency, but preenforcement review of vagueness challenges helps prevent hardship on the defendant, who otherwise must wait until he or she is charged with violating the conditions of community custody, and likely arrested and jailed, before being able to challenge the conditions on this basis.

¶19 As noted, the ripeness doctrine will aid in identifying cases where review would be premature. "Three requirements compose a claim fit for judicial determination: if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *First United Methodist Church v. Hr'g Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996) (internal quotation marks omitted). The court must also consider "the hardship to the parties of withholding court consideration." *Id.* at 255 (internal quotation marks omitted).

¶20 The State contends that Bahl is under no current hardship because the conditions of community custody do not yet apply to him (Bahl is still in prison). As Bahl contends, however, upon his release the conditions will immediately restrict him. *See* RCW 9.94A.631 (a commu-

nity corrections officer may arrest or cause the arrest of an offender without a warrant if he or she suspects the offender has violated a condition; if arrested, the offender must be jailed). Also, as the court in *Loy* observed was true in that case, there is nothing that will change between the present time and Bahl's release that will affect the vagueness analysis. The risk of hardship is significant, and permitting a preenforcement challenge to be made as part of Bahl's appeal of right may reduce the risk.

¶21 Bahl also contends that the questions are purely legal, i.e., whether the conditions violate due process vagueness standards. In many cases, vagueness questions will be amenable to resolution as questions of law. As noted, *Loy* dealt with "pornography," which the Third Circuit concluded was a purely legal question. The State notes that other courts have refused to address the merits of preenforcement vagueness challenges involving conditions with similar terms, citing *Phipps*, 319 F.3d at 192-93. *Bahl*, 137 Wn. App. at 718. However, as Bahl says, the court in *Phipps* did address the merits, under federal plain error review, of facial vagueness challenges to conditions that prohibited possession of " 'sexually oriented or sexually stimulating materials' " and " 'patroniz[ing] any place where such material or entertainment is available.' " *Phipps*, 319 F.3d at 192-93. Moreover, as discussed below, many courts have addressed, as legal questions, vagueness challenges to terms the same as, or comparable to, the terms in the conditions to which Bahl is subject. The vagueness challenges in this case involve legal questions that can be resolved on the present record.

¶22 We conclude that Bahl's vagueness challenges are sufficiently ripe.

■■ ¶23 Turning to the merits, the due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct. *Douglass*, 115 Wn.2d at 178. A statute is unconstitutionally vague if it "(1) . . . does not define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)). If either of these requirements is not satisfied, the ordinance is unconstitutionally vague.

¶24 In addition, when a statute or other legal standard, such as a condition of community placement, concerns material protected under the First Amendment, a vague standard can cause a chilling effect on the exercise of sensitive First Amendment freedoms. *Grayned*, 408 U.S. at 109. For this reason, courts have held that a stricter standard of definiteness applies if material protected by the First Amendment falls within the prohibition. As the Eleventh Circuit observed, "Vagueness concerns are more acute when a law implicates First Amendment rights and a heightened level of clarity and precision is demanded of criminal statutes because their consequences are more severe." *United States v. Williams*, 444 F.3d 1286, 1306 (11th Cir. 2006), *rev'd on other grounds*, ___ U.S. ___, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008).

¶25 While many courts apply to sentencing conditions the same vagueness doctrine that applies with respect to statutes and ordinances, there is one distinction. In the case of statutes and ordinances, the challenger bears a heavy burden of establishing that the law is unconstitutional. This burden exists because of the presumption of constitutionality afforded legislative enactments. A sentencing condition is not a law enacted by the legislature, however, and does not have the same presumption of validity. Instead, imposing conditions of community custody is within the discretion of the sentencing court and will be reversed if manifestly unreasonable. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Imposition of an unconstitutional condition would, of course, be manifestly unreasonable.

¶26 In deciding whether a term is unconstitutionally vague, the terms are not considered in a "vacuum," rather, they are considered in the context in which they are used. *Douglass*, 115 Wn.2d at 180. When a statute does not define a term, the court may consider the plain and ordinary meaning as set forth in a standard dictionary. *State v. Sullivan*, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001); *see also Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 315, 53 P.3d 993 (2002); *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1080 (4th Cir. 2006). If "persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite." *Douglass*, 115 Wn.2d at 179.

¶27 We apply these same considerations here.

¶28 "Pornographic materials." The first challenged condition prohibits Bahl from "possess[ing] or access[ing] pornographic materials, as directed by the supervising Community Corrections Officer." 1 CP at 28. While the State conceded in briefing to the Court of Appeals that this condition is vague, the court refused to accept the concession. The State now contends the condition is not impermissibly vague.

¶29 Many courts have held that sentencing conditions that prohibit access to or possession of pornography are unconstitutionally vague. They have noted that the term "pornography," unlike obscenity, has never been given a precise legal definition, at least insofar as adult pornography is concerned. *E.g.*, *Loy*, 237 F.3d at 263 ("the term 'pornography,' unmoored from any particular statute, has never received a precise legal definition from the Supreme Court or any other federal court of appeals, and remains undefined in the federal code"). In *Loy*, the Third Circuit discussed a number of materials that might or might not be considered pornography, such as the book *Lolita*, Calvin Klein advertisements, and Yeats' poem "Leda and the Swan," and concluded that although the propriety of calling any of these materials pornographic would generate debate,

the debate would not be resolved. *Id.* at 264. The court said, "[W]ith regard to 'pornography' rather than 'obscenity,' we do not 'know it when we see it.' " *Id.*

¶30 The Second Circuit has held that the term "pornographic matter" or "pornographic material" is not unconstitutionally vague when the defendant is convicted for production of child pornography under the federal statutory scheme defining child pornography, *United States v. Cabot,* 325 F.3d 384, 385 (2d Cir. 2003), or transporting a minor in foreign commerce for the purpose of engaging in sexually explicitly conduct, also under the statutory scheme defining child pornography, *United States v. Simmons,* 343 F.3d 72, 81 (2d Cir. 2003). However, when the defendant's conviction itself does not involve pornography, the Second Circuit held that a definition of the term in a criminal statute does not provide due process notice of the meaning of the term. *Farrell v. Burke,* 449 F.3d 470, 487 (2d Cir. 2006); *see also Fitzgerald v. State,* 805 N.E.2d 857, 866-67 (Ind. Ct. App. 2004) (prohibition on possessing or viewing " 'pornographic or sexually explicit materials,' " including, but not limited to, listed items such as videos, compact discs and sexual devices, " 'or any other materials related to illegal or deviant interests or behaviors' " vague; remand for greater specificity in condition).

¶31 In contrast, the Ninth Circuit held that a special condition of supervised release that prohibited pornography was unconstitutionally vague even where the offense for which the defendant was convicted was child pornography under the same statutory scheme defining child pornography at issue in *Cabot* and *Simmons. Guagliardo,* 278 F.3d 868. The court described the term "pornography" as "entirely subjective" and rejected the argument that any vagueness problem was cured by the probation officer's authority to interpret the restriction because "[t]his delegation . . . creates 'a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating.' " *Id.* at 872 (quoting *Loy,* 237 F.3d at 266). The court observed that in

one district court case, the parole officer had interpreted a prohibition on pornography to include any nude depiction, whether a picture from *Playboy Magazine* or a photograph of Michelangelo's sculpture of David. *Id.* The court called the term inherently vague. *Id.* The court remanded for the trial court to impose a condition with greater specificity.

¶32 In our state, the Court of Appeals in *State v. Sansone*, 127 Wn. App. 630, 111 P.3d 1251 (2005), followed the analysis in *Loy* and *Guagliardo* and held that a condition of community placement that prohibited the defendant from possessing or perusing pornography without approval from his probation officer was unconstitutionally vague. Other courts have also found the term vague. *E.g., United States v. Antelope*, 395 F.3d 1128, 1141-42 (9th Cir. 2005); *Taylor v. State*, 821 So. 2d 404 (Fla. Dist. Ct. App. 2002); *Foster v. State*, 813 N.E.2d 1236, 1238-39 (Ind. Ct. App. 2004); *McVey*, 863 N.E.2d at 447-48.

¶33 Mr. Bahl relies on *Sansone*, *Loy*, and *Guagliardo* and urges the court to hold the pornography prohibition unconstitutionally vague. The State claims, however, that unlike the situation in *Loy* and *Guagliardo*, there is a state statute that defines "pornography." RCW 9.68.140 makes it illegal to "promot[e] pornography": "A person who, for profit-making purposes and with knowledge, sells, exhibits, displays, or produces any lewd matter as defined in RCW 7.48A.010 is guilty of promoting pornography." "Lewd matter" is defined under RCW 7.48A.010(2) as "synonymous with 'obscene matter,'" which is defined generally in accord with the definition of "obscenity" adopted by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 24, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973).

¶34 We have observed that "[b]ecause of the inherent vagueness of language, citizens may need to utilize other statutes and court rulings to clarify the meaning of a statute"—"[s]uch sources are considered 'presumptively available to all citizens.'" *State v. Watson*, 160 Wn.2d 1, 8, 154 P.3d 909 (2007) (internal quotation marks omitted) (quoting *Douglass*, 115 Wn.2d at 180). This principle does

not assist with determining the ordinary meaning of "pornography," however. First, even if a citizen is presumed to know the statute pertaining to promotion of pornography, it defines "lewd matter," not "pornography." Second, it is doubtful that a person of ordinary intelligence would equate "pornography" with "obscene matter," since if the proscription applied to obscene matter, this is what the condition should have said. Also, pornography is not the same as obscenity—adult pornography is protected speech while obscenity is not—and it is exceedingly unlikely that a judicially imposed condition on pornography should be read to mix up the two by incorporation of a statutory definition involving obscenity. The definitions in the statutes cited by the State do not provide adequate notice of the meaning of pornography.

¶35 The State also maintains that the federal standard for valid conditions differs from Washington's. As the State points out, under federal law, to avoid First Amendment infirmity, a condition that touches on First Amendment rights must be narrowly tailored and directly related to the goals of protecting the public and promoting the defendant's rehabilitation. Under Washington law, the State argues, all that is necessary is that the conditions be crime-related.

¶36 Washington's law requires more, however. A condition that constitutes a "[l]imitation[ ] upon fundamental rights" is "permissible, provided [it is] imposed sensitively." *Riley*, 121 Wn.2d at 37. In accord with the federal rule, a convict's First Amendment right " 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.' " *Id*. at 37-38 (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)). Thus, conditions may be imposed that restrict free speech rights if reasonably necessary, but they must be sensitively imposed. This meshes with the vagueness doctrine's principle that where the challenged law involves First Amendment rights, a greater degree of specificity may be demanded. Here, for example, Bahl may be restricted in the material

he may access or possess, but the restrictions implicating his First Amendment rights must be clear and must be reasonably necessary to accomplish essential state needs and public order.

¶37 We conclude that the restriction on accessing or possessing pornographic materials is unconstitutionally vague. The fact that the condition provides that Bahl's community corrections officer can direct what falls within the condition only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement.

¶38 We next consider the condition that prohibits Mr. Bahl from frequenting "establishments whose primary business pertains to sexually explicit or erotic material." He maintains that the dictionary definition of the word "frequent" is "visit often," and the term is unclear as to how often he may visit such establishments and at what point visits become frequent. The dictionary definition of "frequent" as a verb is, more fully, "to associate with, be in, or resort to often or habitually : visit often." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 909 (2002).

¶39 In context, the word means that Bahl may not visit such establishments at all—the condition is a ban. *See Riles*, 135 Wn.2d at 349 (a restriction that the defendant "not frequent places where minors are known to congregate" assumed to be a complete ban).

¶40 Bahl next argues that the terms "sexually explicit" and "erotic" are vague. As he contends, courts have found "sexually explicit" vague. *See McVey*, 863 N.E.2d at 447 (condition prohibiting the defendant from possessing or viewing any pornographic "or sexually explicit materials" held unconstitutionally vague). Other courts have upheld this language in the face of a vagueness challenge. *E.g.*, *United States v. Rearden*, 349 F.3d 608, 619-20 (9th Cir. 2003). The dictionary definition of "explicit" is "characterized by full clear expression : being without vagueness or ambiguity . . . UNEQUIVOCAL." WEBSTER'S, *supra*, at 801. Bahl says that adding "sexual" to the term does not make it any

clearer, because a "clear expression of sexuality" or "unequivocal sexual" is not illuminating. Bahl's parsing of the phrase is artificial. Implementing the dictionary definition, the phrase more correctly is "clearly expressed sexual" materials or materials that are unequivocally sexual in nature.

¶41 The dictionary definition of "erotic" is "of, devoted to, or tending to arouse sexual love or desire: as **a** : treating of or depicting sexual love . . . : AMATORY . . . **b** : tending to excite sexual pleasure or desire . . . **c** : directed toward sexual gratification . . . **d** : strongly affected by sexual desire." WEBSTER'S, *supra,* at 772.

¶42 The challenged terms are used in connection with a prohibition on frequenting businesses, i.e., those in the business of "sexually explicit" and "erotic" materials. Terms must be considered in the context in which used. " '[I]mpossible standards of specificity' " are not required since language always involves some degree of vagueness. *State v. Halstien,* 122 Wn.2d 109, 118, 857 P.2d 270 (1993) (quoting *City of Seattle v. Eze,* 111 Wn.2d 22, 26, 759 P.2d 366 (1988)). When all of the challenged terms, with their dictionary definitions, are considered together, we believe the condition is sufficiently clear. It restricts Bahl from patronizing adult bookstores, adult dance clubs, and the like.

¶43 Moreover, as the State points out, the term "sexually explicit" is defined in RCW 9.68.130(1), which makes it unlawful to display "sexually explicit material if [the actor] knowingly exhibits such material on a viewing screen so that the sexually explicit material is easily visible from a public thoroughfare, park or playground or from one or more family dwelling units." "Sexually explicit material" is defined as

> any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or

of anthropological significance shall not be deemed to be within the foregoing definition.

RCW 9.68.130(2).[7] While we do not decide whether this definition alone would be sufficient notice (given that Mr. Bahl was not convicted under this statute), it bolsters our conclusion that "sexually explicit," in the context used, is not unconstitutionally vague.[8]

---

[7] RCW 9.68A.011(3) lists a number of acts that constitute "sexually explicit conduct" for purposes of the chapter, which concerns sexual exploitation of children. RCW 9.68A.011(3) defines "Sexually explicit conduct" as "actual or simulated":

(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;

(b) Penetration of the vagina or rectum by any object;

(c) Masturbation;

(d) Sadomasochistic abuse for the purpose of sexual stimulation of the viewer;

(e) Exhibition of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer;

(f) Defecation or urination for the purpose of sexual stimulation of the viewer; and

(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

Subsection (e) was upheld in the face of a vagueness challenge in *State v. Bohannon*, 62 Wn. App. 462, 814 P.2d 694 (1991).

[8] The State also relies on statutory definitions of "erotic materials" in RCW 9.68.050 and RCW 9.68A.150(3)(b). RCW 9.68.050(2) defines the term as

printed material, photographs, pictures, motion pictures, sound recordings, and other material the dominant theme of which taken as a whole appeals to the prurient interest of minors in sex; which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters or sado-masochistic abuse; and is utterly without redeeming social value.

RCW 9.68A.150(3) defines "erotic materials" for purposes of the prohibition on allowing minors to be on the premises of a commercial establishment open to the public and having live erotic performances:

(b) "Erotic materials" means live performance:

(i) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest of minors; and

(ii) Which explicitly depicts or describes patently offensive representations or descriptions of sexually explicit conduct as defined in RCW 9.68A.011; and

■ ¶44 The next condition that Bahl challenges provides, "Do not possess or control sexual stimulus material for your particular deviancy as defined by the supervising Community Corrections Officer and therapist except as provided for therapeutic purposes." 1 CP at 28.

¶45 Mr. Bahl contends that the term "sexual stimulus" provides insufficient notice of what such materials might be. He also complains that the condition improperly delegates to the community corrections officer and therapist unfettered authority to define the sexual stimulus materials he may not control or possess.

¶46 Mr. Bahl does not discuss the factor that most renders this condition vague, however, which is that the sexual stimulus material must be for his deviancy. The condition cannot identify materials that might be sexually stimulating for a deviancy when no deviancy has been diagnosed, and this record does not show that any deviancy has yet been identified. Accordingly, the condition is utterly lacking in any notice of what behavior would violate it.

¶47 We conclude that this condition is unconstitutionally vague.

## CONCLUSION

¶48 A defendant can raise a vagueness challenge to conditions of community custody for the first time on appeal. Preenforcement vagueness challenges can be brought against conditions of community custody, provided the challenges are ripe. Here, the vagueness challenges are ripe. The condition prohibiting Mr. Bahl from accessing or possessing pornographic materials is unconstitutionally

(iii) Which, when considered as a whole, and in the context in which it is used, lacks serious literary, artistic, political, or scientific value for minors.

These statutes specifically pertain to erotic materials in relation to minors, and their definitions resemble the legal definition of "obscene materials." Because we conclude that the term "erotic materials" in the condition is sufficiently definite, given the dictionary definition of "erotic" and the context, we do not consider these statutes. As used in chapter 9.68A RCW, the term "erotic" is not unconstitutionally vague. *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 758-59, 871 P.2d 1050 (1994).

vague, and the condition concerning sexual stimulus for his particular deviancy is also vague. Accordingly, we remand to the trial court for resentencing. Bahl has not established that the condition barring him from frequenting businesses whose primary business pertains to sexually explicit or erotic material is vague.

¶49 The Court of Appeals is reversed in part and this matter is remanded for resentencing.

ALEXANDER, C.J., and C. JOHNSON, CHAMBERS, OWENS, FAIR-HURST, and STEPHENS, JJ., concur.

¶50 SANDERS, J. (concurring) — The majority holds two of the three challenged conditions of Eric Bahl's community custody are unconstitutionally vague. I agree; two of the conditions are unconstitutionally vague, but the third challenged condition is also unconstitutionally vague. Because the majority reasons otherwise, I write separately.[9]

¶51 The condition in question requires Bahl to " 'not frequent establishments whose primary business pertains to sexually explicit or erotic material.' " Majority at 743 (quoting 1 Clerk's Papers at 28). This condition neither provides Bahl with adequate notice of the proscribed conduct nor provides sufficient standards to prevent arbitrary enforcement.

¶52 A law is vague if it either fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it, or it does not provide standards sufficiently specific to prevent arbitrary enforcement. *State*

---

[9] I must also note the majority, in clear dictum, states the presumption of constitutionality of legislative enactments. Majority at 753. This presumption has no place in our constitutional system. *See Island County v. State*, 135 Wn.2d 141, 155-70, 955 P.2d 377 (1998) (Sanders, J., concurring). Nor should this court pointlessly iterate this unfounded principle. As Justice Robert Jackson eloquently stated in a similar context, "Every repetition imbeds that principle more deeply in our law and thinking and expands it to new purposes. All who observe the work of courts are familiar with what Judge Cardozo described as 'the tendency of a principle to expand itself to the limit of its logic.' " *Korematsu v. United States*, 323 U.S. 214, 246, 65 S. Ct. 193, 89 L. Ed. 194 (1944) (Jackson, J., dissenting) (quoting BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS ¶ 51 (1921)).

*v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004) (citing *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). "An ordinance is unconstitutionally vague if either requirement is not satisfied." *Douglass*, 115 Wn.2d at 178. In view of these principles, Bahl's condition of community custody is unconstitutionally vague.

¶53 A person of ordinary intelligence understands the verb "frequent" as meaning to go to on a regular basis.[10] As such it does not refer to a single instance of conduct, or even a few instances of conduct. Rather, "frequent" refers to regular instances of conduct. Therefore, the condition that Bahl not "frequent" certain establishments is vague; it cannot be determined from the term "frequent" when Bahl engages in the prohibited activity. In other words, how many times must Bahl visit an adult establishment before it may be said he "frequents" the establishment? Without defining when Bahl "frequents" an establishment, Bahl would be unable "to steer between lawful and unlawful conduct." *Grayned*, 408 U.S. at 108. Moreover, without some explicit standards specifying when Bahl "frequents" an establishment, the condition is subject to ad hoc and arbitrary enforcement.[11]

¶54 Moreover, the terms "sexually explicit" and "erotic" are also vague. A person of ordinary intelligence would

---

[10] *See* Webster's Third New International Dictionary 909 (2002) (defining "frequent" as "to associate with, be in, or resort to often or habitually : visit often").

[11] The majority redefines the word "frequent" to mean "never." Majority at 758 (citing *State v. Riles*, 135 Wn.2d 326, 349, 957 P.2d 655 (1998)). In *Riles* this court rejected a challenge to a postrelease condition to "avoid places where children congregate and not frequent places where minors are known to congregate." *Riles*, 135 Wn.2d at 349. Mr. Riles challenged the *overbreadth* of this condition. *See id.* ("Petitioner claims this prohibition will bar him from all public places. The restriction applies only to places where children commonly assemble or congregate." (footnote omitted)). But nothing in *Riles* redefined the word "frequent" to mean "never." In other words, a prohibition on frequenting a place where children congregate does not necessarily prohibit parking one's car next to a playground, provided one does not do so on a regular basis. Similarly, a prohibition on frequenting certain establishments does not necessarily prohibit visiting the establishment, provided one does not do so on a regular basis.

understand the phrase " 'sexually explicit' " to refer to an unequivocal expression of sexual content and the word "erotic" as material to arouse sexual desire.[12] Yet whether material is unequivocally sexual or arouses sexual desire is tremendously subjective; there are more objects of sexual arousal than can ever be dreamt of in the philosophy[13] of this condition. *See McVey v. State*, 863 N.E.2d 434, 447 (Ind. Ct. App. 2007) (holding postrelease condition prohibiting the possession of "sexually explicit materials" to be unconstitutionally vague); *Smith v. State*, 779 N.E.2d 111, 118 (Ind. Ct. App. 2002) (holding same).

¶55 Some common examples demonstrate the vagueness of the condition. This condition may prohibit Bahl from shopping for lingerie at the local mall, but it may not. This condition may prohibit Bahl from perusing a collection of *Playboy* magazines, but it may not. This condition may prohibit Bahl from attending a Karen Finley performance, but it may not.[14]

¶56 The lawfulness of these examples depends solely on the subjective belief of the particular person charged with monitoring Bahl's community custody. The danger is that prohibiting "sexually explicit" or "erotic" material ultimately translates into prohibiting whatever the community custody officer finds personally titillating. *United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001). Erotica, like art, is found in the eye of the beholder; yet enforcement of the law cannot be predicated on the subjective belief of the enforcer. *Cf. Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971) (holding an ordinance was

---

[12] *See* WEBSTER'S, *supra*, at 801 (defining "explicit" as "characterized by full clear expression : being without vagueness or ambiguity . . . UNEQUIVOCAL"); *id.* at 772 (defining "erotic" as "devoted to, or tending to arouse sexual love or desire").

[13] *See* WILLIAM SHAKESPEARE, HAMLET act 1, sc. 5.

[14] Karen Finley is an artist known for a performance piece in which she "visually recounts a sexual assault by stripping to the waist and smearing chocolate on her breasts" while using profanity to describe the sexual assault. *See Nat'l Endowment for Arts v. Finley*, 524 U.S. 569, 596 n.2, 118 S. Ct. 2168, 141 L. Ed. 2d 500 (1998) (Scalia, J., concurring).

unconstitutionally vague for prohibiting conduct "entirely depend[ent] upon whether or not a policeman is annoyed").

¶57 In sum, taking all the challenged terms together and applying their common meaning leaves an ordinary person to wonder what conduct is prohibited. Moreover, the condition fails to provide explicit standards for its application, leading to impermissible ad hoc and arbitrary enforcement. As such this condition is unconstitutionally vague.

¶58 The majority reasons otherwise so I write separately to concur in result only.

¶59 J.M. JOHNSON, J. (concurring) — The majority holds that a community custody condition that prohibits Eric G. Bahl from "possess[ing] or access[ing] pornographic materials" is unconstitutionally vague because the standard is determined "as directed by the supervising Community Corrections Officer." 1 Clerk's Papers (CP) at 28. Although I agree that this particular condition is vague as written, I write separately to emphasize that a properly crafted community custody condition restricting Bahl's right to access sexually explicit materials on remand would be constitutional.

¶60 A " 'defendant's constitutional rights during community placement are subject to the infringements authorized by the [Sentencing Reform Act of 1981],' " chapter 9.94 RCW. *In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 517, 45 P.3d 1103 (2002) (alteration in original) (quoting *In re Pers. Restraint of Caudle*, 71 Wn. App. 679, 683, 863 P.2d 570 (1993) (Sweeney, J., concurring)). In addition to requiring the imposition of certain community custody conditions, the Sentencing Reform Act of 1981 grants sentencing courts the authority to impose "crime-related prohibitions." RCW 9.94A.700(5)(e).

¶61 The majority declares that the sentencing court may impose special conditions that "restrict[ ] the material [Bahl] may access or possess, but the restrictions implicating his First Amendment rights must be clear and must be

reasonably necessary to accomplish essential state needs and public order." Majority at 757-58. In this case, the trial court imposed a special condition restricting Bahl's access to pornography because of "concern about the circumstances of [Bahl's] crime, which showed him to be egregiously unable to control himself when in a state of sexual stimulus." *State v. Bahl*, 137 Wn. App. 709, 715, 159 P.3d 416 (2007).

¶62 Although the majority points out that "the term 'pornography' . . . has never been given a precise legal definition," majority at 754, and that conditions restricting the possession of pornographic materials have often been struck down as vague, specific prohibitions on access to sexually stimulating material have frequently survived vagueness challenges. *E.g.*, *State v. Smith*, 130 Wn. App. 721, 725, 123 P.3d 896 (2005), *review denied*, 157 Wn.2d 1026 (2006) (upholding a condition of community placement prohibiting the defendant from " 'purchas[ing], own[ing], possess[ing] or [perusing] any pornography, catalogs or material which can be read or viewed for sexual gratification' " and which " 'involved children' "); *United States v. Simmons*, 343 F.3d 72, 77 (2d Cir. 2003) (upholding a condition of supervised release prohibiting the defendant from " 'possess[ing] or view[ing] any pornographic material, including videotapes, films, magazines, books and photographs' " and from " 'subscrib[ing] to "adult-only" movie channels' "); *United States v. Phipps*, 319 F.3d 177, 192-93 (5th Cir. 2003) (upholding a supervised release condition prohibiting defendant from possessing " 'sexually oriented or sexually stimulating materials' "); *United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003) (upholding a special condition prohibiting defendant from "possess[ing] any materials depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2)").

¶63 "Sexually explicit" is broader than "pornographic." *See United States v. Loy*, 237 F.3d 251, 264 (3d Cir. 2001) ("[W]e could easily set forth numerous examples of books and films containing sexually explicit material that we

could not absolutely say are (or are not) pornographic."). Perhaps, ironically here, the broader term "sexually explicit" has proved easier than "pornographic" to define and thus may presumably be utilized on remand. In fact, the majority, in upholding a different special condition prohibiting Bahl from "frequent[ing] establishments whose primary business pertains to sexually explicit or erotic material," 1 CP at 28, specifically finds the term "sexually explicit" *not* unconstitutionally vague. Majority at 760. The majority correctly notes "sexually explicit" is statutorily defined under RCW 9.68.130 (making unlawful to display sexually explicit material on a viewing screen that is "easily visible from a public thoroughfare, park or playground or from one or more family dwelling units") and under RCW 9.68A.011(3) (defining "sexually explicit conduct").

¶64 Mr. Bahl should be familiar with such a restriction from his incarceration. The Department of Corrections (DOC) also has a mail policy prohibiting inmates from sending or receiving mail that is "sexually explicit." DOC Policy 450.100 (Mail for Offenders). The policy also provides a definition of this term.

¶65 In my view, a condition restricting a person under community supervision from possessing or accessing "sexually explicit" materials, as defined in a particular statute or the DOC policy, would likely survive a vagueness challenge. The DOC definition of "sexually explicit" seems especially helpful in providing adequate notice because persons under community supervision are already familiar with what materials they can and cannot have.

¶66 In *Loy*, a Fifth Circuit case on which the majority bases a significant portion of its opinion, the court struck down a supervised release condition prohibiting the defendant from possessing " 'all forms of pornography, including legal adult pornography.' " 237 F.3d at 253. The *Loy* court clarified, however, that it "in no way mean[t] to imply that courts may not impose restrictions on the consumption of sexually explicit materials by persons convicted of sex crimes" and that "there is no question that the [court] could,

perfectly consonant with the Constitution, restrict [an offender's] access to sexually oriented materials, so long as that restriction was set forth with sufficient clarity and with a nexus to the goals of supervised release." *Id.* at 266-67.

¶67 Conditions of community custody are meant to "[p]rotect the public" and to "[r]educe the risk of reoffending by offenders in the community." RCW 9.94A.010(4), (7). Bahl has shown that he has difficulty controlling himself when he is sexually stimulated. A special condition prohibiting his access to sexually explicit material furthers the purposes of the Sentencing Reform Act of 1981. Although Bahl and other persons convicted of sex crimes might find such a condition to be restrictive, this limited proscription is clearly preferable to total confinement in prison. Because the sentencing court on remand may craft a community custody condition restricting Bahl's access to sexually explicit materials, I concur.