IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30222-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE LEONEL MONCADA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted Jose Moncada of first degree rape of a child and attempted first degree child molestation. The trial court sentenced Mendez Moncada to a concurrent sentence of life in prison with a minimum of 175 months. On appeal, Moncada contends the trial court committed error, during sentencing, by imposing on him legal financial obligations; by prohibiting him from purchasing, possessing, or looking at pornographic material as a condition of community custody; and by ordering him to undergo plethysmograph examinations at the discretion of his community corrections officer. The State concedes the errors. We agree and remand for resentencing.

In his statement of additional grounds (SAG), Jose Moncada claims a violation of his right to a timely trial under CrR 3.3 and, on that ground, additionally claims ineffective assistance of counsel and prosecutorial misconduct. We reject these

additional assignments of error.

## FACTS

Jose Leonel Mendez Moncada lived in Yakima with his girl friend, Ramona Quinonez, and Quinonez's 11-year-old daughter, A.C. In 2009, Moncada pressed his erect penis against A.C.'s thigh while he penetrated her vagina with his fingers. In February 2010, at A.C.'s request, Moncada massaged her back to alleviate pain from a prior injury. Moncada slid his hands under her panties and massaged her butt. In March 2010, Moncada repeatedly sent A.C.'s brother out of her room; in his absence, Moncada kissed A.C. on her neck and lips, and patted her butt.

A.C. began to cut herself. An aunt noticed the cuts and asked A.C. about them. A.C. responded that "she was sick of her life." Report of Proceedings (RP) (Apr. 22, 2011) at 181. A few weeks later, A.C. phoned her aunt and told her about the abuse from Jose Moncada.

## PROCEDURE

The State charged Jose Moncada with first rape of a child. The information notified Moncada that, if found to be a "persistent offender," the mandatory penalty may be life imprisonment without the possibility of release. Clerk's Papers (CP) at 3. The trial court arraigned Moncada on April 23, 2010. On February 7, 2011, the State amended the charges against Moncada to three counts (1) the original charge of first degree rape of a child on, about, during, or between July 1, 2009, and August 31, 2009;

2

(2) attempted first degree child molestation on, about, during, or between February 1, 2010, and February 28, 2010; and (3) attempted first degree child molestation on, about, during, or between March 1, 2010, and April 1, 2010.

On February 15, 2011, a trial date, Jose Moncada's defense counsel moved to continue the trial to February 22 in order to transcribe another witness interview. Moncada agreed to continue his case one week, but expressly objected to any longer continuance for purposes of his rights under CrR 3.3. The trial court continued the case one week, to February 22, so that counsel could transcribe the interview and complete a different trial. The court termed the postponement an "administrative continuance" and indicated that the new deadline, for purposes of CrR 3.3, would be extended one week. RP (Feb. 15, 2011) at 18. The prosecutor objected and argued that any continuance would result in a 30-day buffer under the rule. The court's February 15 order of continuance listed Moncada's trial date as February 22.

On the afternoon of February 15, the prosecution e-mailed Jose Moncada's counsel reiterating its position. Defense counsel replied he agreed that CrR 3.3 allowed a 30-day extension, and that the new trial deadline was March 24.

On February 18, Jose Moncada's defense counsel and the prosecution e-mailed back and forth to schedule Moncada's new trial date. The earliest both would be available for trial was early April 2011, due to other trials scheduled in late February and throughout March. The prosecution delivered an amended trial status order to Superior

3

Court Judge Ruth E. Reukauf, which she signed on February 18. The order described

defense counsel's and the prosecution's schedule conflicts and noted Moncada's new

CrR 3.3 deadline as March 24.

On February 28, 2011, Jose Moncada's defense counsel claimed that Moncada's

trial deadline, under CrR 3.3, expired that day or had already expired on February 22.

Counsel stated, "We believe that without a motion by the State the speedy trial expires

today." RP (Feb. 28, 2011) at 22. Superior Court Judge Michael McCarthy noted the

existence of "dueling orders," referring to the February 15 order to continue and the

February 18 trial status order, which respectively noted Moncada's timely trial date as

February 22 and March 24. On February 28, the prosecution moved to continue the trial

date to March 7. The court granted this motion and, relying on the February 18, 2011

trial status order's trial deadline date of March 24, pushed Moncada's trial deadline to

April 7.

On April 4, the prosecution moved to continue Jose Moncada's trial because of its

trial counsel's illness. The trial court granted the motion, commenting, "I find there is

good cause for a continuance. [The prosecutor] has been in my court all morning. I can

tell she's having difficulty talking." RP (Apr. 4, 2011) at 2. The court observed that the

case was complex and another prosecuting attorney should not be expected to try the

case. The April 4 order of continuance set trial for April 11, resulting in a new CrR 3.3

trial deadline of May 11.

On April 19, Jose Moncada moved to dismiss his prosecution with prejudice claiming a violation of his right to a timely trial under CrR 3.3. Moncada argued:

> I would have to say that implicit in his calculation here was that he was ruling that he was continuing this under the (f) section of Criminal Rule 3.3. The (f) section, unlike the (e) section, does not add 30 days to any continuance. It's merely an excluded period of time.

RP (Apr. 19, 2011) at 9. The trial court ruled that CrR 3.3(b)(5)'s 30-day extension applies to both CrR 3.3(e) and by reference CrR 3.3(f).

Trial commenced on April 22, within the May 11 trial deadline. On April 26, a jury found Moncada guilty on counts one and three of first degree rape of a child and attempted first degree child molestation. The jury found Moncada not guilty on count two, attempted first degree child molestation in February 2010. For both counts one and three, the jury found by special verdict that Moncada used his position of trust or confidence to facilitate the commission of the crime.

The trial court imposed concurrent sentences of: life with a minimum term of 175 months for count one, and life with a minimum term of 75 months for count three. The court imposed legal financial obligations (LFOs) in the amount of $1,050. As part of the judgment and sentence, the court made the following findings:

> **2.7 Financial Ability:** The Court has considered the total amount owing, the defendant's past, present, and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The Court finds that the defendant has the present ability or likely future ability to pay the financial obligations imposed herein. RCW 9.94A.753.

5

. . . .

**4.D.4 Costs of Incarceration:** In addition to the above costs, the court finds that the defendant has the means to pay for the costs of incarceration, in prison at a rate of $50.00 per day of incarceration or in the Yakima County Jail at the actual rate of incarceration but not to exceed $100.00 per day of incarceration (the rate in 2011 is $79.75 per day), and orders the defendant to pay such costs at the statutory rate as assessed by the Clerk. Such costs are payable only after restitution costs, assessments and fines listed above are paid. RCW 9.94A.760(2).

**4.D.5 Costs of Medical Care:** In addition to the above costs, the court finds that the defendant has the means to pay for any costs of medical care incurred by Yakima County on behalf of the defendant, and orders the defendant to pay such medical costs as assessed by the Clerk. Such costs are payable only after restitution costs, assessments and fines listed above are paid. RCW 70.48.130.

CP at 97, 100. The court imposed the following conditions of sentence:

> Within 30 days of release from confinement, enter into and make reasonable progress in sexual deviancy therapy with a therapist approved by the community corrections officer for a period of not less than 60 months and/or during the set term of community custody supervision.

> Do not purchase, possess, or view any pornographic material in any form as defined by the treatment provider or the supervising Community Corrections Officer.

> Submit to regular polygraph and plethysmograph examinations about deviant sexual behavior upon the request of the supervising Community Corrections Officer.

CP at 99.

## LAW AND ANALYSIS

*Assignment of Error 1: Present or Future Ability to Pay LFOs*

Courts may impose LFOs, such as court costs, deoxyribonucleic acid (DNA) collection fees, and victim restitution, if a defendant has or will have the financial ability

to pay them. RCW 10.01.160(3); RCW 9.94A.760(2); *State v. Curry*, 118 Wn.2d 911, 914-16, 829 P.2d 166 (1992). The trial court need not make a formal finding that the defendant has or will have the ability to pay. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). But where the court does make such a finding, the record must support it. *State v. Bertrand*, 165 Wn. App. 393, 403-05, 267 P.3d 511 (2011). This court reviews a trial court's determination of an offender's financial resources and ability to pay for clear error. *Bertrand*, 165 Wn. App. at 404 n.13 (citing *Baldwin*, 63 Wn. App. at 312).

Here, the trial court did not consider Jose Moncada's ability to pay LFOs before imposing them. The trial court heard some testimony pertinent to Moncada's financial condition. At sentencing, Moncada's defense counsel stated:

> In addition, Your Honor, my client is a long-time member of this community, who has been actively contributing to the community. Even after he was injured back in 1998 with a back injury and was on Labor & Industries Disability, he took his Labor & Industries settlement when that was resolved and turned it around into a viable restaurant business, which unfortunately has had to close—since the charges were brought against him.

RP (Aug. 30, 2011) at 94-95. Moncada told the court that he previously provided financial support to his mother, wife, and children. But these statements concern Moncada's *past* ability to pay and tend to show that he has since lost the ability to provide such support. There is nothing in the record showing that Moncada has the present or future ability to pay LFOs. *Bertrand*, 165 Wn. App. at 404.

7

As conceded by the State, the trial court's finding that Jose Moncada has the present or future ability to pay LFOs lacks any support in the record. Upon resentencing, the trial court should reassess whether to impose LFOs.

*Assignment of Error 2: No Pornography*

Jose Moncada assigns error to the community custody condition that he not purchase, possess, or view pornography as defined by his community corrections officer. Moncada specifically argues the condition is unconstitutionally vague. Moncada cites *State v. Bahl*, 164 Wn.2d 739, 193 P.3d 678 (2008) to support his argument. Acknowledging the applicability of *Bahl*, the State correctly concedes error.

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct." *Bahl*, 164 Wn.2d at 752. "[W]hen a statute or other legal standard, such as a condition of community placement, concerns material protected under the First Amendment, a vague standard can cause a chilling effect on the exercise of sensitive First Amendment freedoms." *Bahl*, 164 Wn.2d at 753 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). "[C]onditions may be imposed that restrict free speech rights if reasonably necessary, but they must be sensitively imposed." *Bahl*, 164 Wn.2d at 757.

"In deciding whether a term is unconstitutionally vague, the terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are

8

used." *Bahl*, 164 Wn.2d at 754; *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795

P.2d 693 (1990). "If persons of ordinary intelligence can understand what the [condition]

proscribes, notwithstanding some possible areas of disagreement, the [condition] is

sufficiently definite." *Douglass*, 115 Wn.2d at 179.

Here, the trial court imposed the condition, "Do not purchase, possess, or view any

pornographic material in any form as defined by the treatment provider or the supervising

Community Corrections Officer." CP at 99. Moncada argues that the condition

impermissibly relies on a community corrections officer to define pornography.

Moncada aptly relies on our Supreme Court's holding in *Bahl*.

In *Bahl*, a jury found the defendant guilty of second degree rape and first degree

burglary. 164 Wn.2d at 743. The trial court imposed the community custody condition,

"Do not possess or access pornographic materials, as directed by the supervising

Community Corrections Officer." *Bahl*, 164 Wn.2d at 743. Noting that "pornography"

lacks a precise legal definition, the *Bahl* court concluded:

> [T]he restriction on accessing or possessing pornographic materials is
> unconstitutionally vague. The fact that the condition provides that Bahl's
> community corrections officer can direct what falls within the condition
> only makes the vagueness problem more apparent, since it virtually
> acknowledges that on its face it does not provide ascertainable standards for
> enforcement.

*Bahl*, 164 Wn.2d at 758. The community custody condition at issue here suffers the same

fatal flaws.

9

*Assignment of Error 3*: *Plethysmograph Examinations*

Jose Moncada assigns error to the trial court's order that he undergo penile plethysmograph testing at his community corrections officer's discretion. Again, the State concedes that the trial court erred. On remand, the State requests this court instruct the trial court to modify the condition to allow Moncada's sexual deviance therapist to order plethysmograph testing, in place of a community custody officer.

Plethysmograph testing is used to diagnose and treat sexual deviancy. "The procedure involves placing a pressure sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders*, 14 TEMP. POL. & CIV. RTS. L. REV. 1, 2 (2004). Here, the trial court required Moncada, "Submit to regular polygraph and plethysmograph examination about deviant sexual behavior upon the request of the supervising Community Corrections Officer." CP at 99.

When a court imposes a community custody condition without a statutory basis, this court reviews the condition for an abuse of discretion, without presuming its constitutionality. *State v. Valencia*, 169 Wn.2d 782, 791-93, 239 P.3d 1059 (2010). "Plethysmograph testing is regarded as an effective method for diagnosing and treating sex offenders." *State v. Riles*, 135 Wn.2d 326, 343-44, 957 P.2d 655 (1998), *abrogated*

10

*on another ground by Valencia*, 169 Wn.2d at 792. "The use of physiological assessment measures, such as penile plethysmography, may yield useful information regarding the sexual arousal patterns of sex offenders. This data can be useful in assessing baseline arousal patterns and therapeutic progress." WAC 246-930-310(7)(c). But "[u]nlike polygraph testing, plethysmograph testing does not serve a monitoring purpose." *Riles*, 135 Wn.2d at 345.

*Riles* disposes of this issue. In *Riles*, the trial court imposed a similar condition, "submit to polygraph & plethysmograph testing upon request of therapist and/or [Community Corrections Officer], at own expense." 135 Wn.2d at 333. But Riles "was not required to enter into treatment or therapy." The *Riles* court held, "It is not permissible for a court to order plethysmograph testing without also imposing crime-related treatment which reasonably would rely upon plethysmograph testing as a physiological assessment measure." *Riles*, 135 Wn.2d at 345. The *Riles* court thus approved of the use of penile plethysmography for the limited purposes of diagnosing and treating sexual deviancy.

The condition at issue in this case entrusts discretion with a community corrections officer, instead of Moncada's sexual deviancy therapist. But "[p]lethysmograph testing serves no purpose in monitoring compliance with ordinary community placement conditions." *Riles*, 135 Wn.2d at 345. Because a community

11

custody officer cannot diagnose or treat Moncada's sexual deviancy, neither can he or she order plethysmograph testing.

The trial court also ordered Moncada to enroll in sexual deviancy therapy. Therefore, on remand, instead of striking the order to undergo plethysmograph testing, the trial court may modify the order to entrust discretion with Moncada's sexual deviancy therapist to direct the testing. In amending the order, the trial court should expressly limit the scope of penile plethysmograph testing to diagnosis and treatment, in order to comply with *Riles*.

## SAG

We agree with trial court rulings that Jose Moncada's rights under CrR 3.3 were not violated. The State is correct that, upon the granting of the motion to continue the trial date of February 22, 2011, the new deadline for trial, under CrR 3.3, was extended 30 days or until March 24. Before March 24, the trial court granted postponements for good cause and the trial commenced before the new deadline of May 11.

Jose Moncada's counsel filed a motion to dismiss arguing that CrR 3.3(f), unlike CrR 3.3(e), does not add 30 days to any continuance. The rule reads to the contrary.

When arguing ineffective assistance of counsel and prosecutorial misconduct, Jose Moncada relies on the court's alleged error in failing to dismiss the charges because of a violation of CrR 3.3. Because there was no violation, these additional arguments fail.

12

On March 20, 2013, Jose Moncada moved this court to allow him to file a pro se reply brief regarding his timely trial argument. Under RAP 10.1(h), we may authorize or direct the filing of such a brief. But because further briefing is not necessary to dispose of the issue, we deny the motion.

## CONCLUSION

We affirm the convictions of Jose Moncada. We remand for resentencing with instructions to the trial court to (1) strike the finding that Moncada has the present or future ability to pay and review again the suitability of imposing LFOs; (2) strike the community custody condition that Moncada may not purchase, possess, or view pornography as defined by his community corrections officer; and (3) amend the community custody condition regarding plethysmograph testing to be at the discretion of Moncada's sexual deviancy therapist and only for diagnosing or treating that deviancy.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, C.J.

13