150 P.3d 580 (2006)
STATE of Washington, Respondent,
v.
Justin Daniel AUTREY, Appellant.
State of Washington, Respondent,
v.
Darrell R. Abbott, Appellant.
Nos. 24670-1-III, 24952-2-III.
Court of Appeals of Washington, Division 3.
December 28, 2006.
*582 William D. Edelblute, Attorney at Law, Spokane, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Respondent.
*583 BROWN, J.
¶ 1 We linked these cases to consider like questions about the validity of "explicit consent" and "prior approval" community custody conditions. Justin D. Autrey additionally contends the court erred in rejecting his Special Sex Offender Sentencing Alternative (SSOSA) request. Darrell R. Abbott additionally contends the court erred in imposing a community custody condition allowing the Department of Corrections (DOC) to enter his residence upon reasonable suspicion a community custody violation occurred. Finding no error, we affirm.

FACTS
¶ 2 State v. Autrey. In 2001, Mr. Autrey, who was 21 years old at the time, began a sexual relationship with the 12-year-old daughter of his girlfriend, Rebecca Hooven (Ms. Hooven). Mr. Autrey repeatedly engaged in sexual contact and intercourse with Ms. Hooven's daughter until around July 2004. The State charged Mr. Autrey with one count of second degree rape of a child and one count of third degree rape of a child. He pleaded guilty as charged in August 2005. Although DOC's pre-sentence investigation report (PSI) disagreed, the State, under a plea agreement, recommended a sentence at the low end of the standard range to be suspended under SSOSA.
¶ 3 Mr. Autrey was sentenced in October 2005. Defense counsel, with support from the victim and Ms. Hooven, argued for a SSOSA. The State made its agreed recommendation for a SSOSA. Dr. Paul Wert reported he considered Mr. Autrey an appropriate, but marginal, candidate for SSOSA.
¶ 4 Ms. Hooven explained she wanted to maintain a family relationship with Mr. Autrey, herself and her daughter, indicating her then 16-year-old daughter would move out when she turned 18. But Ms. Hooven added, if her daughter wanted to move back that Mr. Autrey would have to find a place of his own.
¶ 5 The court responded, "I'm speaking frankly . . . you didn't protect your daughter before and now you want to take back the man who had sex with your 12-year-old daughter while he was living with you. This is the man you want to live with. So how do I know that you are going to protect her from him?" Report of Proceedings (RP) at 16. The court observed the mother "is not saying she is going to protect her daughter. I don't hear that." RP at 18. Rejecting SSOSA, the court ordered Mr. Autrey to 111 months confinement, the low end of the standard range, including community custody conditions:
(20) That you do not have sexual contact with anyone without his or her explicit consent.
(21) That you do not have sexual contact with anyone without prior approval of your therapist and your community corrections officer.
Clerk's Papers (CP) at 29.
¶ 6 This appeal followed.
¶ 7 State v. Abbott. Mr. Abbott pleaded guilty to second degree assault with sexual motivation. The victim was a minor. Over Mr. Abbott's objection, the court imposed the following community custody conditions:
Condition # 20: That you do not have sexual contact with anyone without his or her explicit consent.
Condition # 21: That you do not have sexual contact with anyone without prior approval of your therapist.
Condition # 24: That you permit DOC home visits to monitor compliance with the conditions of community custody. . . . Such home visits shall not be conducted unless there exists a well founded, reasonable suspicion that a violation of the terms of Community Custody has occurred.
CP at 42. This appeal followed.

ANALYSIS

A. Community Custody Conditions
¶ 8 The issue is whether the trial court erred by imposing community custody conditions requiring Mr. Autrey and Mr. Abbott (appellants) to obtain explicit consent before sexual contact and prior approval from their therapist (and Community Corrections Officer (CCO) in Mr. Autrey's case). Appellants contend explicit-consent condition *584 20 does not relate to their convictions involving minors and is unconstitutionally vague. Appellants contend condition 21 does not relate to their crimes and constitutes and improperly delegates the court's discretion to the therapist (and CCO in Mr. Autrey's case).
¶ 9 Generally, a court may impose crime-related prohibitions and affirmative conditions. RCW 9.94A.505(8). A "crime-related prohibition" is an order prohibiting conduct that directly relates to the circumstances of the crime. RCW 9.94A.030(13). We review whether a community placement decision is crime-related for abuse of discretion. State v. Riley, 121 Wash.2d 22, 37, 846 P.2d 1365 (1993).
¶ 10 "Crime-related prohibitions" during the period of community custody following release from total confinement further the "purposes of the Sentencing Reform Act of 1981 . . . [which include] imposition of just punishment, protection of the public, and offering the offender an opportunity for self-improvement." State v. Letourneau, 100 Wash.App. 424, 431, 997 P.2d 436 (2000). "`Crime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct." RCW 9.94A.030(13). "Although the conduct prohibited during community custody must be directly related to the crime, it need not be causally related to the crime." Letourneau, 100 Wash.App. at 432, 997 P.2d 436.
¶ 11 Here, Mr. Autrey was convicted of rape of a child and Mr. Abbott was convicted of second degree assault with sexual motivation, involving a minor. As a community custody condition, appellants were prohibited from having sexual contact with anyone without that person's explicit consent. Generally, non-consensual sex is criminal conduct. Thus, the "explicit consent" requirement is reasonably crime-related. Appellants' actions involved children too young to legally consent. Hence, the trial court did not abuse its discretion by finding this condition reasonably necessary to accomplish the State's purpose of protecting the public.
¶ 12 Turning to appellants' vagueness argument, we review alleged due process violations de novo. State v. Sandoval, 123 Wash.App. 1, 4, 94 P.3d 323 (2004). Due process requires that citizens have fair warning of what constitutes prohibited conduct. City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990). To satisfy due process, a prohibition must be definite enough that an ordinary person can understand what conduct is prohibited. Id. at 178, 795 P.2d 693. The prohibition must provide standards of guilt that are clear enough to preclude arbitrary enforcement. Id. This prohibition is plain, needing no interpretation.
¶ 13 Unless a statute or rule defines its terms, the words have their ordinary meaning. State v. Smith, 118 Wash.App. 480, 484, 93 P.3d 877 (2003), review denied, 151 Wash.2d 1014, 89 P.3d 712 (2004). "Explicit" means: "characterized by full clear expression; leaving nothing implied; unequivocal, such that there might be no mistake as to the meaning, unreserved and unambiguous in expression, externally visible, clearly observable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 801, def. 1, 2, 4, 5 (1993).
¶ 14 While precise application of "explicit" in a given context may vary, that does not mean a prohibition using the word is unconstitutional. Although the prohibition plainly requires expressed assent, appellants' concerns are groundless because the State would likely prosecute any nonconsensual sexual conduct rather than seek a sentencing condition review. In that case, the issue of the victim's consent would be decided beyond a reasonable doubt. The trial court did not err.
¶ 15 Next, appellants contend the prior approval condition as it relates to adult sexual contact does not relate to their crimes involving children. We disagree. As noted, a court is generally permitted to impose crime-related prohibitions on a convicted sex offender's period of community custody to protect the public and offer the offender an *585 opportunity for self-improvement. Letourneau, 100 Wash.App. at 431, 997 P.2d 436. Here, the offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors.
¶ 16 Appellants argue the court improperly delegated its authority to the therapist (and CCO in Mr. Autrey's case) by requiring their prior approval before they have sexual contact with anyone. Generally, "[s]entencing courts have the power to delegate some aspects of community placement to the DOC." State v. Sansone, 127 Wash. App. 630, 642, 111 P.3d 1251 (2005). "While it is the function of the judiciary to determine guilt and impose sentences, `the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body.'" Id. (quoting State v. Mulcare, 189 Wash. 625, 628, 66 P.2d 360 (1937)).
¶ 17 Here, the court properly delegated therapeutic decisions, including the appropriateness of Mr. Autrey and Mr. Abbott's sexual partners, to the therapist (and CCO in Mr. Autrey's case). It is well settled that some delegation of the court's power is permitted, and if the condition of approval before sexual contact is permitted for treatment purposes, assigning the responsibility of such approval to Mr. Autrey and Mr. Abbott's therapist (and Mr. Autrey's CCO) would not constitute an excessive delegation.
¶ 18 If, after their release, the supervision as applied appears intrusive as appellants fear, they may seek a sentencing condition review. Given all, we conclude the sentencing court did not err in ordering sentencing condition 21.

B. SSOSA
¶ 19 The issue is whether the trial court erred in reasoning the victim's mother was unable to protect her daughter and denying Mr. Autrey's SSOSA request.
¶ 20 Generally, "[a] criminal defendant is permitted to appeal a standard range sentence only if the sentencing court failed to follow a procedure required by the Sentencing Reform Act." State v. J.W., 84 Wash.App. 808, 811, 929 P.2d 1197 (1997); RCW 9.94A.585(1). In other words, "[s]imply arguing that the court abused its discretion in imposing a standard range sentence [as opposed to imposing a SSOSA sentence] does not raise an appealable issue." J.W., 84 Wash.App. at 811, 929 P.2d 1197 (citing State v. Onefrey, 119 Wash.2d 572, 574 n. 1, 835 P.2d 213 (1992)).
¶ 21 Here, Mr. Autrey does not argue the trial court committed a procedural error. Instead, he merely argues the trial court abused its discretion by mischaracterizing the mother's testimony. But the court engaged in fact-finding discretion. Mr. Autrey's argument fails, because the trial court's reasons are supported by the record. The victim's mother failed to protect her child for two years.
¶ 22 We review SSOSA decisions for an abuse of discretion. State v. Frazier, 84 Wash.App. 752, 753, 930 P.2d 345 (1997). The standard is breached "when the decision or order of the court is `manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Hays, 55 Wash.App. 13, 16, 776 P.2d 718 (1989) (quoting State v. Cunningham, 96 Wash.2d 31, 34, 633 P.2d 886 (1981)). Based upon the PSI report, DOC would be unlikely to control Mr. Autrey. At best, Dr. Wert considered Mr. Autrey "marginally" qualified for a SSOSA. CP at 64.
¶ 23 Moreover, Ms. Hooven related she wanted Mr. Autrey to be part of her family. Although Ms. Hooven testified Mr. Autrey would have to find a different place to live if her daughter chose to live with her, the court possessed fact-finding discretion to disbelieve her, as the court did. Therefore, we conclude the court did not err.

C. DOC Search
¶ 24 The issue is whether the trial court erred in imposing community custody condition 24, requiring Mr. Abbott to allow DOC compliance monitoring based upon "a well founded, reasonable suspicion that a violation *586 of the terms of Community Custody has occurred." CP at 42. Mr. Abbott contends this condition violates state and federal constitutional rights. The State responds that this issue is not ripe for review.
¶ 25 The unconstitutionality of a community custody condition is not ripe for review unless the person is harmfully affected by the part of the condition alleged to be unconstitutional. State v. Massey, 81 Wash. App. 198, 200, 913 P.2d 424 (1996). In Massey, the court reviewed a community placement order that required Mr. Massey to submit to searches by a CCO; the order lacked a statement that searches must be based on reasonable suspicion. The court held Mr. Massey's claim was premature until he was subjected to a search that he deemed unreasonable. Id. The Massey court concluded whether a community custody order expressly states so or not, "the standard for adjudicating a challenge to any subsequent search remains the same: Searches must be based on reasonable suspicion." Id. at 201, 913 P.2d 424.
¶ 26 Similarly, Mr. Abbott's issue is not yet ripe for review because a search has not taken place. Even so, the sentencing court properly included the reasonable suspicion standard prerequisite for a community placement search.
¶ 27 Affirmed.
WE CONCUR: SCHULTHEIS, A.C.J., and KATO, J.