

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71303-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE ALFREDO MARRUFO-SARINANA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 27, 2015 |
| | ) | |

LAU, J. — Jose Marrufo-Sarinana appeals his conviction for first degree child molestation involving YD. He argues that in closing argument the prosecutor improperly appealed to the jurors' emotions, expressed a personal opinion about witness's credibility, and trivialized the burden of proof. He further argues that a community custody condition prohibiting him from dating women or forming relationships with families that have minor children is unconstitutionally vague. Finding no error, we affirm.

## FACTS

The State charged Jose Marrufo-Sarinana by first amended information with one count of first degree child molestation. Although the evidence was disputed at trial, the

evidence shows the following: Marrufo-Sarinana lived with his girlfriend, Reyna Figueroa, and her three daughters, YD, KD, and AD.

On February 17, 2013, 11 year-old YD fell asleep watching television in her mother's bed. She stayed there all night. YD slept on one side, Figueroa in the middle, and Marrufo-Sarinana on the other.

At 5:00 a.m. the next morning, Figueroa got up and left for work. Marrufo-Sarinana and YD remained in bed. YD testified that when she awoke Marrufo-Sarinana was hugging her from behind. She said he rubbed his hand on her stomach, under her clothing, and then under her bra. After he touched her breast he put his hand into the waistband of her sweatpants. YD pretended to be asleep, but at this point she got out of bed and left the room.

YD went directly to her sisters' room, crying and afraid, she told them what happened. They locked the door. KD texted their mother telling her, "You need to get home right now. Something happened." RP (10/29/13) at 86. Figueroa immediately confronted Marrufo-Sarinana, who admitted that he had just hugged YD but claimed nothing happened. KD called the police.

Everett Police Officer Travis Katzer spoke with Marrufo-Sarinana after the incident. Officer Katzer spoke some Spanish, and so was able to communicate with Marrufo-Sarinana using a combination of Spanish and English. Officer Katzer stated that Marrufo-Sarinana denied touching YD inappropriately. Marrufo-Sarinana agreed to write a statement.

Everett Police Detective Aaron Defolo read Marrufo-Sarinana's written statement to the jury. In his statement, Marrufo-Sarinana wrote that he "hugged the girl from the

back only. Have never done that. The girl states that I touched her in her intimate parts. When she woke up, she freaked out, but nothing of that happened." RP (10/29/13) at 145. He wrote that Figueroa "asked me why did I touch the girl. I told her what happened just as I wrote it. I accept my fault. I know that I was not supposed to do." RP (10/29/13) at 145.

Marrufo-Sarinana did not testify and rested his case without presenting evidence.

Marrufo-Sarinana argued in closing that his statement where he accepted fault was not a confession, because he at all times denied touching YD inappropriately. He argued it was a recognition of the problem that the hug caused.

A jury convicted Marrufo-Sarinana as charged. He appeals.

## ANALYSIS

Marrufo-Sarinana alleges three instances of prosecutorial misconduct in closing remarks. "To prevail on a claim of prosecutorial misconduct, a defendant must show the conduct was both improper and prejudicial in the context of the entire record and circumstances at trial." State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012). "Courts will find prejudice only if there is a substantial likelihood that the misconduct affected the jury's verdict." Thompson, 169 Wn. App. at 495. The defendant bears the burden of showing both that the conduct was improper and that it caused prejudice. State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003).

When the defendant fails to object to a comment made by the prosecutor in closing argument, even a comment that touches on a constitutional right, the alleged misconduct will not be reviewed unless the comment is so flagrant and ill intentioned as to cause an enduring and resulting prejudice that could not have been remedied by a

71303-5-I/4

curative instruction to the jury. State v. Smith, 144 Wn.2d 665, 679, 30 P.3d 1245 (2001); State v. French, 101 Wn. App. 380, 386-88, 4 P.3d 857 (2000). In analyzing prejudice, we look to the context of the total argument, the issues, the evidence and the instructions. State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

Passion and Prejudice

Marrufo-Sarinana argues that the prosecutor improperly appealed to the jury's emotions. Br. of Appellant at 6.

Marrufo-Sarinana alleges the prosecutor improperly argued, "in the real world bad things happen, and people do bad things to children." RP (10/30/13) at 21. He also argued as follows:

> [Prosecutor]: So despite that human nature, you can't always pretend or ignore it. Particularly not in this courtroom, in this building right here right now. Like it or not, you're going to face it, and when you do, there's no reason to doubt the defendant did exactly what Y.D. said he did.
>
> And this is the building where those things are revealed; this is the building where people that prey on children are held accountable. And that's exactly what...
>
> [Defense counsel]: Objection, Your Honor.
>
> [Prosecutor]: ...I am asking you to do.
>
> [Defense counsel]: Appealing to the passion and prejudice of the jury.
>
> The Court: Overruled.
>
> [Prosecutor]: I was almost done. This is the exactly where those people are held accountable. And that's what I'm asking you to do by returning a verdict of guilty. Thank you.

RP (10/30/13) at 21-22.

-4-

Arguments intended to provoke fear, anger, a desire for revenge, or which are irrelevant, irrational, or inflammatory are improper appeals to passion or prejudice. In re Pers. Restraint of Cross, 180 Wn.2d 664, 724, 327 P.3d 660 (2014). It is improper for a prosecutor to ask a jury to return a verdict to send a message or to act as a conscience to the community. State v. Bautista-Caldera, 56 Wn. App. 186, 195, 783 P.2d 116 (1989).

Marrufo-Sarinana cites State v. Perez-Mejia, where we reversed a murder conviction when the prosecutor encouraged jurors to correct a larger societal problem. 134 Wn. App. 907, 917-19, 143 P.3d 838 (2006). Perez-Mejia does not control. The prosecutor asked the jury to "send a message" about gang violence, appealed to the patriotism of the jury, and made an argument designed to call attention to the defendant's ethnicity. Perez-Mejia, 134 Wn. App. at 917-18.

Unlike in Perez-Mejia, the prosecutor's argument did not ask the jury to send a message, appeal to the jurors' patriotism, or mention Marrufo-Sarinana's ethnicity. The prosecutor properly argued that the evidence supported the charge against Marrufo-Sarinana, and that he should be held accountable "by returning a verdict of guilty." It is not improper for a prosecutor to argue that the defendant should be "held to account by a jury's decision; that is indeed the jury's responsibility and function." State v. McNallie, 64 Wn. App. 101, 111, 823 P.2d 1122 (1992), aff'd, 120 Wn.2d 925, 846 P.2d 1358 (1993). Viewed in context, nothing about the prosecutor's argument was an appeal to decide the case on an improper basis or an attempt to influence the jury. The argument was not improper and thus, not misconduct.

Burden of Proof

Marrufo-Sarinana argues that the prosecutor committed misconduct by misstating the law and trivializing the reasonable doubt standard in closing argument. Appellant's Br. at 10.

At trial, the prosecutor argued as follows:

> But your job, your role as juror, is not to decide how bad somebody was molested. The job is to decide whether or not they were molested at all, and specifically whether or not the State's evidence has proved it beyond a reasonable doubt.
>
> So to the extent you think, well, could have been worse, or maybe you think for some reason this wasn't so bad, you're on the wrong track. I acknowledge it could have been worse, but clearly, it meets the law and it was a child molest.
>
> If there's a spectrum of acts that meet child molestation, you're not to decide where it falls on that spectrum, only whether or not it's on the spectrum at all.
>
> Maybe analogous to a pregnancy test, yes or no. If it's yes, it doesn't tell you how pregnant or how far along; just is or isn't.
>
> So with that in mind, I want to have you think about the evidence in this case and whether it's shown beyond a reasonable doubt that that man molested Y.D.

RP (10/30/13) at 12-13.

It is misconduct for a prosecutor to make arguments that misstate or shift the State's burden to prove the defendant's guilt beyond a reasonable doubt. State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). This includes comparing the beyond a reasonable doubt standard to every day decision making. State v. Anderson, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009).

Marrufo-Sarinana did not object to this argument. His claim is waived unless he can show the remark was so flagrant and ill intentioned the prejudice could not have

been addressed with a curative instruction.  State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Marrufo-Sarinana fails to meet this burden because he cannot show the comment was improper, let alone flagrant and ill intentioned.  He cites Anderson, 153 Wn. App. 417 and Lindsay, 180 Wn.2d 423.  But in Anderson, the prosecutor's comments were improper because he compared the burden of proof to the decision to have elective surgery, whether to leave children with a babysitter, and to changing lanes on the freeway.  Anderson, 153 Wn. App. at 425, 431.  These examples trivialized the burden of proof because they compared the standard to commonplace events.  Anderson, 153 Wn. App. at 431.

Likewise, in Lindsay, the prosecutor compared the burden of proof to a puzzle, arguing "[y]ou could have 50 percent of those puzzle pieces missing and you know it's Seattle."  180 Wn.2d at 436.  The court held that this argument was improper because it quantified the burden of proof.  Lindsay, 180 Wn.2d at 436.

Marrufo-Sarinana's reliance on Anderson and Lindsay is misplaced.  Here, the prosecutor's argument twice informed the jury that the proper burden of proof was evidence beyond a reasonable doubt.  The prosecutor's single, isolated comment referring to a pregnancy test did not implicate the burden of proof.  Although unartful, the comment cautioned the jury against viewing the case based merely on their view of the seriousness of the alleged conduct.  Instead, the prosecutor properly argued the jury must determine "whether or not the State's evidence has [been] proved beyond a reasonable doubt."  RP (10/30/13) at 12-13.

Further, defense counsel's closing argument acknowledged that the prosecutor must prove the charge "beyond a reasonable doubt, a burden which [the prosecutor] recognizes is a heavy one." RP (10/30/13) at 24 (emphasis added). Marrufo-Sarinana does not establish this argument was incurably flagrant and ill intentioned.

Marrufo-Sarinana cannot show the comment was improper. It is therefore waived.

But even assuming the comment was improper, Marrufo-Sarinana does not show prejudice. The court properly instructed the jury on the presumption of innocence, the burden of proof, and the definition of beyond a reasonable doubt. CP 32 (Instruction No. 3). The jury is presumed to follow the trial court's instructions. State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Moreover, any prejudice could have been easily neutralized with a timely curative instruction.

### Witness Credibility

Marrufo-Sarinana argues that the prosecutor committed misconduct by expressing a personal opinion about the victim's credibility. Br. of Appellant at 9. We disagree.

At trial, the prosecutor argued in rebuttal closing that YD was telling the truth. He argued "[i]f you think for some reason she was lying, she deserves an Academy Award. And that was from start to finish in this case." RP (10/30/13) at 14. Marrufo-Sarinana did not object.

"It is impermissible for a prosecutor to express a personal opinion as to the credibility of a witness or the guilt of a defendant." Lindsay, 180 Wn.2d at 437. But a

-8-

prosecutor has "wide latitude to argue inferences from the facts concerning witness credibility." State v. Warren, 165 Wn.2d at 30.

Central to Marrufo-Sarinana's defense was the issue of witness credibility. In her opening remarks, defense counsel stated that "[t]his entire case is an accusation and a denial. All the testimony that you are going to hear is going to stem around that accusation and that denial." RP (10/29/13) at 9. In closing, counsel argued "[t]here were only two people in that bedroom, [YD] and Jose Marrufo-Sarinana. And the evidence that you heard does not all corroborate [YD]." RP (10/30/13) at 23. Defense counsel placed YD's credibility squarely at issue.

The prosecutor's argument was not improper for two reasons: First, there was no explicit statement of personal opinion. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (prejudicial error will not be found unless it is clear and unmistakable that counsel is expressing a personal opinion). Second, prosecutors have wide latitude to argue reasonable inferences from the facts concerning witness credibility. State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997). Marrufo-Sarinana fails to establish that this argument was incurably flagrant and ill intentioned. Any error could have been cured by a prompt instruction and the jury was properly instructed that the State had the burden of proof.

Regarding the two arguments by the prosecutor for which defense counsel made no objection, the decision not to object or request a curative instruction "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

Marrufo-Sarinana's challenges to the prosecutor's closing remarks also fail because he has not demonstrated that the outcome of trial would have been different had an objection been lodged and a curative instruction been given. The record evidence of Marrufo-Sarinana's guilt was very strong. After the molestation, YD immediately reported it to her sisters. YD was crying and afraid. The sisters immediately locked their bedroom door and KD texted an urgent message to Figueroa to come home. Within 10 minutes of that text, YD and KD each told their mother what happened when she arrived home. Figueroa immediately confronted Marrufo-Sarinana who admitted he hugged YD while in bed. KD immediately called the police and reported the molestation while Figueroa spoke to Marrufo-Sarinana. The police arrived within minutes. Figueroa reported the molestation to the officers. Figueroa and her daughters completed written witness statements. Figueroa described YD's demeanor as "[d]estroyed, crying, terrified." RP (10/29/13) at 91. Officer Atkins described YD as "crying uncontrollably." RP (10/29/13) at 107. She told him that Marrufo-Sarinana touched her while she was in bed.

After advising Marrufo-Sarinana of his Miranda[1] rights, Officer Katzer asked Marrufo-Sarinana what happened. He admitted to hugging YD. He agreed to provide a written statement of the incident.

YD told nurse practitioner Paula Skamski that Marrufo-Sarinana touched her breast and stomach under her clothes and put his hand under her waistband. The trial court admitted a copy of KD's text message which stated, "Mom, We need to talk

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

urgently." RP (10/29/13) at 144. The trial court also admitted a copy of Marrufo-Sarinana's hand written statement which states in part:

> I went to bed on the same bed, covered myself, and hugged [YD] from the back only. Have never done that. And the girl states that I touched her in her intimate parts. When she woke up, she freaked out, but nothing of that happened. And she left the room....my wife came back and asked me why did I touch the girl. I told her what happened just as I wrote it. I accept my fault. I know that I was not supposed to do."

RP (10/29/13) at 145.

### Cumulative Effect

Marrufo-Sarinana argues that the above comments require reversal, "objected to and not, because the misconduct was prejudicial and impervious to curative instruction." Br. of Appellant at 11.

The cumulative error doctrine applies only when several trial errors occur which, standing alone, may not be sufficient to justify reversal, but when combined, may deny defendant a fair trial. State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because there are no errors here, this doctrine does not apply.

### Community Custody Condition

Marrufo-Sarinana challenges on unconstitutional vagueness grounds the community custody condition imposed at sentencing that prohibits dating women or forming relationships with minor children. Br. of Appellant at 14.

Following Marrufo-Sarinana's conviction, the trial court imposed a number of community custody conditions. One condition related to forming relationships with those with minor children:

> 8. Do not date women or form relationships with families who have minor children, as directed by the supervising Community Corrections Officer.

71303-5-I/12

CP 20 (Appendix 4.2 Additional Conditions of Community Custody).

Marrufo-Sarinana contends that this condition is "written so broadly as to seemingly prohibit Mr. Marrufo-Sarinana from maintaining communication with friends or family members who 'have minor children,' regardless of whether those children live with them, or whether the appellant has access to visitation. The condition is unclear about written communication with such families, and it delegates full authority to the community correction officer to determine the conduct which is permitted." Br. of Appellant at 14. We disagree.

From the outset, the State argues that the invited error doctrine precludes review of this issue because Marrufo-Sarinana agreed to the community custody condition.[2] Br. of Respondent at 18. The invited error doctrine applies where the defendant engages in some affirmative action by which he knowingly and voluntarily set up the error. State v. Phelps, 113 Wn. App. 347, 353, 57 P.3d 624 (2002). But the record does not support the State's contention. At sentencing, the State told the court about the Department of Corrections' proposed list of community custody conditions. The State said "[defense counsel] and I have looked at it together and proposed some deletions." RP (12/18/13) at 4. This statement does not show the type of affirmative act that would preclude review under the invited error doctrine.

The Fourteenth Amendment of the United States Constitution and article I, section 3 of the Washington Constitution require that citizens have fair warning of

_____

[2] The State provides no citation to the record for this assertion. Br. of Respondent at 18-19.

proscribed conduct. State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). "A statute is unconstitutionally vague if it '(1)... does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) ... does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" Bahl, 164 Wn.2d at 752-53 (alterations in original) (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). An ordinance that fails to meet either of these requirements is unconstitutionally vague. Bahl, 164 Wn.2d at 753.

This assures that ordinary people can understand what is allowed and are protected against arbitrary enforcement. State v. Valencia, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010). A condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. Valencia, 169 Wn.2d at 793.

Imposing conditions of community custody is within the discretion of the sentencing court and will be reversed only if manifestly unreasonable. Valencia, 169 Wn.2d at 791-92. Imposing an unconstitutional condition is manifestly unreasonable. Bahl, 164 Wn.2d at 753.

We consider the terms of a community custody condition in the context in which they are used. Bahl, 164 Wn.2d at 754.

We rejected a challenge similar to the one made in the present case in State v. Kinzle, 181 Wn. App. 774, 326 P.3d 870, review denied, 337 P.3d 325 (2014). There, the defendant was convicted of two counts of first degree child molestation. The court ordered the defendant not to "date women nor form relationships with families who have

minor children, as directed by the supervising Community Corrections Officer." Kinzle, 181 Wn. App. at 785. The defendant argued that the condition was overbroad, vague, and unnecessary. We held that under RCW 9.94A.703(3)(b), the sentencing court has discretion to order an offender to refrain from "direct or indirect contact with the victim of the crime or a specified class of individuals." Kinzle, 181 Wn. App. at 785 quoting RCW 9.94A.703(3)(b). Because the defendant's crime involved children he contacted through a social relationship with their parents, we held the condition was reasonably necessary to protect the public. Kinzle, 181 Wn. App. at 785.

Kinzle controls here. Marrufo-Sarinana's contact with YD occurred as a result of a social relationship with her mother. The challenged condition is reasonably crime-related and necessary to protect the public. See, e.g., State v. Autrey, 136 Wn. App. 460, 468, 150 P.3d 580 (2006).

Marrufo-Sarinana analogizes to Valencia and Bahl. In Valencia, our Supreme Court considered a condition prohibiting a defendant from possessing or using "any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances..." Valencia, 169 Wn.2d at 785. The court reasoned that the condition left too much discretion to individual community corrections officers and was therefore unconstitutionally vague. Valencia, 169 Wn.2d at 795.

And in Bahl, the Supreme Court held that a community custody condition prohibiting a defendant from possessing or accessing "pornographic" materials was unconstitutionally vague. Bahl, 164 Wn.2d at 758. The court explained that "pornography" does not have a precise legal definition and, insofar as it relates to adult

pornography, is protected speech. <u>Bahl</u>, 164 Wn.2d at 754. After finding the condition vague, the court wrote "[t]he fact that the condition provides that Bahl's community corrections officer can direct what falls within the condition only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." <u>Bahl</u>, 164 Wn.2d at 758.

This case is unlike <u>Valencia</u> and <u>Bahl</u>. The condition in <u>Valencia</u> relied on a community corrections officer to give meaning to the term "any paraphernalia," which could have encompassed any large number of everyday items. In <u>Bahl</u>, the corrections officer was responsible for defining "pornography"—a term without a legal definition.

We reject Marrufo-Sarinana's vagueness challenge.

CONCLUSION

For the reasons discussed above, we affirm.

WE CONCUR:

-15-