**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80503-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| TYRONE JOEL MOORE, | |
| Appellant. | |

APPELWICK, J. — Moore asserts the trial court abused its discretion in declining to impose a SSOSA at sentencing. He asserts the trial court erred in imposing a condition of community custody restricting his ability to engage in certain relationships. He asserts two conditions restricting his access to computers and the internet violate his First Amendment rights as overbroad. We remand for clarification of conditions of community custody 23 and 26, and otherwise affirm.

FACTS

In April 2019, Tyrone Moore pleaded guilty to one count of rape of a child in the first degree. Moore requested a special sex offender sentencing alternative (SSOSA) pursuant to chapter 94A.670 RCW. He was evaluated by a certified sexual offender treatment provider who felt he was an appropriate candidate for a SSOSA. The Department of Corrections (DOC) investigator recommended a standard range sentence as the best option for Moore. The State recommended

a standard range sentence of 108 months with lifetime community custody. The victim also spoke at sentencing. She indicated she was opposed to a SSOSA.

The court denied Moore's request for a SSOSA. It imposed a sentence of 108 months of confinement with a lifetime of community custody. Conditions included restrictions on computers and internet access as well as dating women or forming relationships with families with minor children.

Moore appeals.

## DISCUSSION

Moore asserts that the trial court erred in declining to impose a SSOSA at sentencing. Further, he asserts three of the conditions of community custody were improperly imposed.

I. Imposition of a Standard Range Sentence

Moore challenges his standard range sentence, asserting the court abused its discretion in denying his request for a SSOSA. He argues he was amenable to treatment and that both he and the community would benefit from a SSOSA.

Under RCW 9.94A.585(1), a sentence within the standard sentence range for an offense shall not be appealed. But, a defendant may challenge a standard range sentence where they challenge the trial court's interpretation of the SSOSA statutes. State v. Adamy, 151 Wn. App. 583, 587, 213 P.3d 627 (2009).

A SSOSA may be available for some people convicted of sex crimes who meet statutory criteria. State v. Osman, 157 Wn.2d 474, 477 at n.3, 139 P.3d 334 (2006). If a court finds that a defendant is statutorily eligible for a SSOSA, it may order an examination to determine whether the defendant is amenable to

2

treatment. RCW 9.94A.670(3). The examiner assesses and reports regarding the defendant's amenability to treatment and relative risk to the community. RCW 9.94A.670(3)(b). After receipt of the reports, the court weighs a list of considerations provided by RCW 9.94A.670(4). It must give great weight to the victim's opinion regarding whether the offender should receive a treatment disposition. Id.

The decision to impose a SSOSA is entirely within the trial court's discretion. Osman, 157 Wn.2d at 482. The court abuses its discretion if it categorically refuses to impose a particular sentence or if it denies a sentencing request on an impermissible basis. Id.

While Moore alleges there were grounds upon which a court could have granted his sentencing request, he does not allege an impermissible basis upon which the court denied it.

The record demonstrates that the trial court followed proper sentencing procedure. The DOC and Moore's treatment provider each prepared a report for the court. The treatment provider recommended the court grant Moore's sentencing request, but the DOC disagreed.

At sentencing, the court referenced both reports. The reports contained information regarding Moore's risk to the community, his amenability to treatment, and the circumstances of the offense. The court also explicitly considered the victim's opposition to a SSOSA, noting "that is supposed to carry great weight as well." The record demonstrates that the

court properly weighed the necessary considerations under RCW 94A.760(4) when it imposed a standard range sentence.

We hold the trial court did not abuse its discretion when it denied Moore's sentencing request.

II. Conditions of Community Custody

Moore next challenges three of the conditions of community custody. He asserts condition 18 is not sufficiently crime related and challenges conditions 18, 23, and 26 on constitutional grounds.

A crime-related prohibition "prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We review a trial court's imposition of crime-related conditions of community custody for abuse of discretion. State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. State v. Sassen Van Elsloo, 191 Wn.2d 798, 806, 425 P.3d 807 (2018).

The sentencing court may impose conditions that restrict a defendant's constitutional rights provided those conditions are imposed sensitively. State v. Bahl, 164 Wn.2d 739, 757, 193 P.3d 678 (2008). Limitations on constitutionally-protected conduct must be "narrowly tailored and directly related to the goals of protecting the public and promoting the defendant's rehabilitation." Id.

Generally, sentencing courts have the power to delegate some aspects of community placement to the DOC. State v. Sansone, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005). "While it is the function of the judiciary to determine guilt and

4

impose sentences, 'the execution of the sentence and the application of the various provisions for the mitigation of punishment and the reformation of the offender are administrative in character and are properly exercised by an administrative body.'" Id. (quoting State v. Mulcare, 189 Wash. 625, 628, 66 P.2d 360 (1937)). But, a community custody standard must not delegate boundless discretion. State v. Magana, 197 Wn. App. 189, 201, 389 P.3d 654 (2016), abrogated on other grounds by State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). Such conditions are unconstitutionally vague if (1) they do not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) they do not provide sufficiently ascertainable standards to protect against arbitrary enforcement. Padilla, 190 Wn.2d at 677.

Contrary to the State's assertion, Moore's constitutional challenges to three of his community custody conditions are ripe. A preenforcement challenge to a condition is ripe if the issues raised are primarily legal, do not require further factual development, and the challenged action is final. State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015). The court must also consider the hardship to the parties of withholding court consideration. Bahl, 164 Wn.2d at 751. Using this ripeness test, in Bahl, our Supreme Court held that a preenforcement challenge to a community custody condition prohibiting the possession of pornographic material was ripe for review. Id. at 743, 751-752. Because pornography implicated First Amendment rights, the challenge dealt with a purely legal issue that courts could solve on the record without the need for additional facts to aid the court's inquiry. Id. at 752. Similarly, Moore alleges three of his conditions violated his First

5

Amendment rights. His challenges do not require further factual development, satisfying the Bahl ripeness test.

### A. Restrictions on Sexual Contact and Relationships

Condition 18 provides,

> Do not date women nor form relationships with families who have minor children, as directed by the supervising Community Corrections officer. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider/Community Corrections Officer approves of such.

Moore argues condition 18 impermissibly infringes on his First Amendment rights. He argues requiring him to disclose his sex offender status violates his freedom to refrain from speech. Generally, individuals have the right to speak freely and the right to refrain from speaking at all. Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). However, an offender's usual constitutional rights during community placement are subject to SRA-authorized infringements. State v. Lee, 12 Wn. App. 2d 378, 402, 460 P.3d 701, (citing the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW), review denied, 195 Wn. 2d 1032, 468 P.3d 622 (2020). The court may order the defendant to perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community. RCW 9.94A.703(3)(d).

In Lee, this court held requiring the defendant to disclose his sex offender status did not violate his freedom to refrain from speech because the required utterance was crime-related. 12 Wn. App. 2d at 402. Because the required

utterance here is also crime-related, we hold that it does not violate Moore's constitutional right to refrain from speaking.[1]

Next, he argues that condition 18 violates his freedom of association. The First Amendment protects an individual's right to enter into and maintain certain human relationships. U.S. CONST. amend. 1; Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). But, the SRA permits the court to order a defendant to refrain from direct or indirect contact with the victim of the crime or a specified class of individuals. RCW 9.94A.703(3)(b).

Moore gained access to his victim when he moved in with her parents, one of whom was an old friend. He was the victim's godfather. The trial court reviewed the reports and expressed concern over Moore's continued attempts to manipulate those around him as well as his lack of empathy for his victims. The requirements prevent Moore from gaining access to minor children by exploiting his relationships with adults in their lives. They allow adults to make informed decisions regarding social contact between Moore and any children in their care, homes, or families. This restriction is reasonable.

Neither the requirement not to form certain relationships nor the prohibition of sexual contact in a relationship are total bans on protected activity. Both provide

---

[1] Moore also asserts the final two sentences of this condition are not reasonably crime-related. The State contends Moore waived any challenge to condition 18 on the basis that it was crime related when he did not object to them. We agree with the State. See State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137 (whether a condition of sentence is crime-related is a question of fact that we will not review for the first time on appeal), review denied, 193 Wn.2d 1029, 445 P.3d (2019). We will, however, consider contentions that solely present questions of law. See Bahl, 164 Wn.2d at 751-52.

for a community corrections officer (CCO) or treatment provider to provide approval for the protected activity. Unlike conditions which have been found to be impermissibly vague, this condition does not delegate the definition of a key term to the CCO or treatment provider. See Magana, 197 Wn. App. at 201 (condition vesting supervising CCO with the sole authority to define spaces where children congregate was unconstitutionally vague); Irwin, 191 Wn. App. at 654-55 (same). It is well settled that some delegation of the court's power is permitted, and if the condition is permitted for treatment purposes, assigning the responsibility of such approval to Moore's CCO or treatment provider would not constitute an excessive delegation. See State v. Autrey, 136 Wn. App. 460, 469, 150 P.3d 580 (2006). These prohibitions are directly related to the goals of protecting the public and promoting Moore's rehabilitation.

We hold the trial court did not abuse its discretion in imposing condition 18.

B. Restrictions on Computer and Internet Access

Finally, Moore argues two conditions restricting computer and internet access, considered alone or taken together, are overbroad and must be stricken. Conditions 23 and 26 provide,

> 23. . . . Do not access the Internet on any computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches) in any location, unless such access is approved in advance by the supervising Community Corrections Officer and your treatment provider. The CCO is permitted to make random searches of any computer, phone, or computer-related device to which the defendant has access to monitor compliance with this . . . condition.
>
> . . . .

26. . . . You may not possess or maintain access to a computer, unless specifically authorized by your supervising Community Corrections Officer. You may not possess any computer parts or peripherals, including but not limited to hard drives, storage devices, digital cameras, web cams, wireless video devices or receivers, CD/DVD burners, or any device to store [or] reproduce digital media or storage.

The First Amendment generally bars the government from dictating what we see, read, speak, or hear. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002). "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." Packingham v. North Carolina, ___ U.S. ___, 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017). Moore relies on Packingham, which concerned the constitutionality of a North Carolina statute restricting internet usage for registered sex offenders. Id. at 1733. The statute made it a felony for sex offenders to access commercial social networking websites where the sex offender knew the site permits minor children to become members or to create or maintain personal Web pages. Id. The Court held this statute violated the First Amendment. Id. at 1737. It found,

North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge.

Id.

Here, Moore used digital devices and the internet to facilitate his crimes. He showed the victim pornography on his computer and took explicit photographs of her with a digital camera. He manipulated her by trading time on her computer

9

in exchange for taking explicit photos of her. Crime-related restriction on his access to the internet, computers, and other digital devices is merited. The conditions imposed are not a complete ban on computer or internet access as addressed in Packingham. Moore is allowed to use the internet on any device for employment purposes. He may also use the internet and computers with prior CCO approval. However, the conditions provide no guidance to the CCO regarding what types of computer and internet access should be approved.

Moore argues this court should either strike conditions 23 and 26 in their entirety, or strike every portion of them except the final sentence of condition 23 that allows the CCO to make random searches of any computer, phone, or computer-related device to which Moore has access. We decline this invitation.

Instead, we remand for clarification of these conditions. In view of the potential impact on recognized free speech rights, the scope and meaning of any limitation on the use of computers must be clarified on remand. Specifically, the sentencing court should clarify (1) the distinction between merely using a computer and possessing or maintaining access to a computer, (2) what standards apply to the CCO in determining what access to computers is allowed, and (3) given the ubiquitous presence of computers in our society, if, and why, the conditions impact any use or possession of items that include computers with no capacity to store or download images. The sentencing court should also clarify with regards to condition 23 what standards apply to the CCO in determining what internet access unrelated to employment purposes is allowed.

We affirm in part, and remand for clarification of community custody conditions 23 and 26.

Appelwick, J.

WE CONCUR:

Chun, J.