IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86108-5-I |
| Respondent, | DIVISION ONE |
| v. | |
| ANDRÉS MURILLO MÁRQUEZ | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — Andrés Murillo Márquez lived with Lorena M., her husband, and their three children for a number of years. In 2020, H.G. and R.G., Lorena's daughters, informed their parents that Murillo Márquez had been sexually abusing them.

Murillo Márquez was arrested, charged, and found guilty of child molestation in the second degree. The court sentenced Murillo Márquez to 20 months in prison and 36 months of community custody. Murillo Márquez appeals, challenging community custody conditions as insufficiently crime-related and unconstitutional. Murillo Márquez also asserts that the court order prohibiting contact with the victim and other minor children exceeds the statutory maximum.

We affirm the community custody condition requiring Murillo Márquez to inform his community corrections officer (CCO) and sexual deviancy treatment provider of any dating relationship, disclose his sex offender status to any

potential partner, and obtain permission from his CCO before engaging in sexual contact; conclude that the community custody conditions requiring home visits and breath analysis and urinalysis are not ripe for review; and remand for the trial court to modify the no-contact order to comply with the statute.

### FACTS

Andrés Murillo Márquez began dating Flora M. in the early 2000s. For financial reasons, Murillo Márquez and Flora shared an apartment with Flora's sister Lorena M. and her husband. Murillo Márquez continued to live with Lorena, her husband, and their three children, H.G., R.G., and J.G., after he and Flora separated. H.G. was seven when Murillo Márquez moved in with her family.

In April 2020, 15-year-old H.G. informed her mother that Murillo Márquez had been sexually abusing her. R.G., now 12 years old, also disclosed that she had been raped and molested by Murillo Márquez.

The State charged Murillo Márquez with one count of child molestation in the first degree, one count of child molestation in the second degree, one count of rape of a child in the first degree, and one count of rape of a child in the second degree concerning his contact with H.G. The State also charged Murillo Márquez with one count of child molestation in the second degree concerning his contact with R.G. A jury found Murillo Márquez guilty of child molestation in the second degree, acquitted him of child molestation in the first degree, and

deadlocked on the remaining charges. The State later dismissed the deadlocked charges.

The trial court sentenced Murillo Márquez to a standard range sentence of 20 months in prison with 36 months of community custody. Among other requirements, the community custody conditions required Murillo Márquez to inform the supervising CCO and sexual deviancy treatment provider of any dating relationships; disclose sex offender status before any sexual contact; obtain approval from the treatment provider before engaging in sexual contact; consent to home visits to monitors compliance with supervision; submit to urinalysis and/or breath analysis; and have no contact with the victim.

Murillo Márquez appeals.

ANALYSIS

Community Custody Conditions

Murillo Márquez asserts that a handful of his community custody conditions, including the requirement that he inform his CCO and sexual deviancy treatment provider before he begins a dating relationship, that he must submit to home visits and inspections, and that he must submit to urinalysis and breath analysis, must be stricken because they are neither crime-related nor constitutional. We conclude that the condition requiring disclosure of dating relationships is crime-related and constitutional and that the latter two conditions are not ripe for review.

Constitutional challenges to community custody may be raised for the first time on appeal. *State v. Peters*, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019). We review a trial court's statutory authority to impose a community custody condition de novo. *State v. Houck*, 9 Wn. App. 2d 636, 646, 446 P.3d 646 (2019). Otherwise, we review community custody conditions for an abuse of discretion. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

1. Dating Relationship Disclosures

Murillo Márquez asserts that the community custody condition requiring that he inform his CCO and sexual deviancy treatment provider of any dating relationship, disclose his sex offender status to any potential partner, and gain permission from his treatment provider before engaging in sexual contact, is neither crime-related nor constitutional. We disagree, concluding that the community custody condition is sufficiently crime-related and constitutional.

a. *Crime-Related*

Murillo Márquez states that the community custody condition requiring disclosure is not sufficiently crime-related because the condition applies broadly to all dating relationships, with no limitation that those relationships may involve minors. We disagree.

Under RCW 9.94A.703(3)(f), a trial court has discretion to require an offender to comply with crime-related prohibitions. A crime-related prohibition is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

Similarly, a court may require an offender to engage in rehabilitative programs or perform other affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community. RCW 9.94A.703(3)(d). Both provisions require that the ordered prohibition or conduct connects to the crime. *State v. Geyer*, 19 Wn. App. 2d 321, 331, 496 P.3d 322 (2021); *State v. Jones*, 118 Wn. App. 199, 208, 76 P.3d 258 (2003).

Placing limitations on an " 'offender's freedom [to choose] even adult sexual partners is reasonably related to [sexual crimes involving minors] because potential romantic partners may be responsible for the safety of live-in or visiting minors.' " *State v. Gantt*, 29 Wn. App. 2d 427, 457, 540 P.3d 845 (internal quotation marks omitted) (quoting *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 61, 469 P.3d 322 (2020)), *review denied*, 3 Wn.3d 1002 (2024). Therefore, delegating the task of vetting future relationships to a CCO or therapist is appropriate. *State v. Autrey*, 136 Wn. App. 460, 468, 150 P.3d 580 (2006).

Murillo Márquez relies on an unpublished portion of *State v. Gililung*[1] to challenge that reasonable relationship. But *Gililung* is both non-binding and distinguishable. GR 14.1.

In *Gililung*, law enforcement arrested Gililung during an undercover operation designed to identify people looking to commit sexual abuse crimes

---

[1] No. 57466-7-II, slip op. at 29-30 (unpublished portion), https://www.courts.wa.gov/opinions/pdf/D2%2057466-7-II%20Published%20Opinion.pdf.

against children. 31 Wn. App. 2d 718, 721, 552 P.3d 813 (2024) (published in part). No actual child was involved. *Gililung*, 31 Wn. App. 2d at 721. Rather, Gililung's crimes concerned a fictional 16-year-old. *Gililung*, 31 Wn. App. 2d at 721.

In contrast, Murillo Márquez's crime involved an assault on an actual child; a child he gained access to through his long-standing relationship with her parents. So, while limiting sexual contact with consenting adults had little to do with Gililung's online attempt to reach a fictional child, the condition is clearly crime-related for Murillo Márquez because it will determine the ways in which he engages in relationships that could lead to access to children.

Murillo Márquez then attempts to differentiate between a romantic relationship and a "financial cohabitation" to assert no evidence shows that he used a dating or intimate relationship to gain access to a minor. But that distinction is not relevant. Nothing in the record indicates that Murillo Márquez chose this particular child because he did not have a romantic relationship with either of her parents. Rather, the record indicates that Murillo Márquez repeatedly assaulted a child to whom he had relatively easy access. It is reasonable to consider other ways in which he might gain such easy access. Accordingly, regulating the ways in which Murillo Márquez engages in relationships that could lead to access to children is crime-related.

We conclude that the community custody condition requiring that Murillo Márquez inform his CCO and sexual deviancy treatment provider of any dating

relationship, disclose his sex offender status to any potential partner, and obtain permission from his treatment provider before engaging in sexual contact is sufficiently crime-related.

  *b. Constitutionality*

  Murillo Márquez then contends that the community custody condition requiring disclosure violates his First Amendment freedom of association and his constitutional right to engage in sexually intimate activity under *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003). We disagree.

  "The First Amendment protects a person's freedom of association, including intimate association." *State v. Frederick*, 20 Wn. App. 2d 890, 909, 506 P.3d 690 (2022). A court may limit this right " 'if reasonably necessary to accomplish the essential needs of the state and public order.' " *Frederick*, 20 Wn. App. 2d at 910 (internal quotation marks omitted) (quoting *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)). Therefore, to order an offender "not to have contact with a class of individuals who share no relationship to the offender's crime" is unreasonable. *State v. Riles*, 135 Wn.2d 326, 350, 957 P.2d 655 (1998).

  *Lawrence* then guarantees a constitutional right to engage in sexual intimate activity with another person within the home. 539 U.S. at 578. But a community custody condition requiring approval prior to sexual contact is not unconstitutional under *Lawrence* because "*Lawrence* did not analyze the reduced

rights of a parolee, and. . . a parolee's constitutional rights are subject to SRA[2]-infringements." *State v. Lee*, 12 Wn. App. 2d 378, 403, 460 P.3d 701 (2020).

Here, as noted above, Murillo Márquez's sexual contact with adults is reasonably related to his crime involving children. Therefore, the community custody condition does not order Murillo Márquez not to have contact with a class of individuals who share no relationship to his crime. Acknowledging the role that access to children played in Murillo Márquez's crime, restricting such access is reasonably necessary to accomplish the needs of the state and public order. And the community custody condition does not absolutely prohibit Murillo Márquez from engaging in consensual sexual contact with adults. It simply requires that he inform his potential partner of the risk he poses, as well as informing his CCO or treatment provider.

Furthermore, the community custody condition does not violate his constitutional right to sexual intimacy because this court has clearly held that *Lawrence* did not extend to individuals subject to community custody.

The community custody condition requiring disclosure does not violate Murillo Márquez's First Amendment freedom of association or constitutional right to sexual intimacy.

2. Home Visits

Murillo Márquez also maintains that the community custody condition requiring that he submit to home visits to monitor compliance permits unlawful

---

[2] Sentencing Reform Act of 1981, ch. 9.94A RCW.

searches in violation of article I, section 7 of the Washington State Constitution. We conclude that the issue is not yet ripe for review.

A preenforcement challenge to community custody conditions is ripe for review when " 'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " *State v. Nelson*, __ Wn.2d ___, 565 P.3d 906, 913 (2025) (internal quotation marks omitted) (quoting *State v. Cates*, 183 Wn.2d 531, 534, 354 P.3d 831 (2015)). "Further factual development is needed when the challenger's argument is based on the potential for '[s]ome future misapplication of the community custody condition,' which necessarily depends 'on the particular circumstances of the attempted enforcement.' " *Nelson*, 565 P.3d at 913 (alteration in original) (internal quotation marks omitted) (quoting *Cates*, 183 Wn.2d at 534).

Occasionally, the risk of hardship to a defendant may justify review of a challenge before it is factually developed. *Nelson*, 565 P.3d at 914. That risk is greatest when the challenged conditions " 'immediately restrict[] the petitioners' conduct upon their release from prison.' " *Nelson*, 565 P.3d at 914 (alteration in original) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010)). A risk of hardship is insufficient to justify review, however, when complying with challenged conditions does not require the defendant to do, or refrain from doing, anything upon release unless and until the State requests it. *Nelson*, 565 P.3d at 914.

9

Here, Murillo Márquez's home visit condition does not require him to do, or refrain from doing, anything upon his release unless and until the Department of Corrections (DOC) requests it. Therefore, Murillo Márquez's challenge requires further factual development. We conclude that the issue is not ripe for review.

3. Urinalysis and Breath Analysis

Murillo Márquez contends that the community custody condition requiring that he be available for drug and alcohol testing at the request of his CCO or treatment provider is not sufficiently crime-related and unconstitutionally invades his right to privacy. This issue is similarly not ripe for review.

To reiterate, a preenforcement challenge to a community custody condition is ripe when the issues are mainly legal, do not require further factual development, and the action is final. *Nelson*, 565 P.3d at 913. A preenforcement challenge is not ripe for review when it "rests on the factually unsupported assumption that [breath analysis] and [urinalysis] testing will be 'conducted in an unreasonable manner' or 'used impermissibly as part of a fishing expedition to discover evidence of other crimes.'" *Nelson*, 565 P.3d at 914 (internal quotation marks omitted) (quoting *State v. Olsen*, 189 Wn.2d 118, 134, 399 P.3d 1141 (2017)).

Murillo Márquez's breath analysis and urinalysis conditions do not require him to do, or refrain from doing, anything upon his release unless and until DOC requests it. Consequently, his challenge again requires further factual development. The issue is not ripe for review.

Statutory Maximum

Lastly, Murillo Márquez states that the no-contact order limiting contact with H.G. and other minors exceeds the statutory maximum for child molestation and is therefore unlawful on its face. The State agrees. Murillo Márquez is correct and we remand for the trial court to limit the no-contact term to 10 years.

A trial court's authority to impose sentencing conditions is statutory. *In re Postsentence Review of Leach*, 161 Wn.2d 180, 184, 163 P.3d 782 (2007). Sentencing provisions outside the authority of the trial court are unlawful. *State v. Pringle*, 83 Wn.2d 188, 193-94, 517 P.2d 192 (1973). Erroneous or otherwise unlawful sentences may be challenged for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

Under RCW 9.94A.505, a trial court may impose no-contact orders with victims as a crime-related prohibition as long as the no-contact period does not exceed the statutory maximum sentence. *State v. Armendariz*, 160 Wn.2d 106, 108, 120, 156 P.3d 201 (2007). RCW 9.94A.030(50) defines "statutory maximum sentence" as "the maximum length of time for which an offender may be confined as punishment for a crime." Child molestation is a class B felony. RCW 9A.44.086(2). The statutory maximum for a class B felony is 10 years. RCW 9A.20.021(1)(b).

Here, the no-contact order prohibits Murillo Márquez from contact with H.G. and other minors for a term of 20 years. As this exceeds the statutory maximum sentence for child molestation, the no-contact order is unlawful. We

11

remand for the trial court to limit the no-contact order to the statutory maximum of 10 years.

We affirm the community custody condition requiring Murillo Márquez to inform his CCO and sexual deviancy treatment provider of any dating relationship, disclose his sex offender status to any potential partner, and obtain permission from his CCO before engaging in sexual contact; conclude that the community custody conditions requiring home visits and drug and alcohol testing are not ripe for review; and remand for the trial court to modify the no-contact order to comply with the statutory maximum.

WE CONCUR: