# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51769-8-II |
| Respondent, | |
| v. | |
| NANAMBI IBO GAMET, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Nanambi Ibo Gamet appeals from the legal financial obligations (LFOs) imposed by the trial court following his guilty plea convictions for two counts of criminal mischief. He argues that the trial court improperly imposed a criminal filing fee and a DNA[1] collection fee. In his statement of additional grounds for appeal (SAG)[2], Gamet also challenges several of his community custody conditions.  The State concedes that under *State v. Ramirez*[3], the 2018 amendments to the LFO statutes[4] apply and that remand is required for the court to strike the criminal filing fee and the DNA collection.  We agree with the State's concession and remand to the sentencing court to strike the criminal filing fee and the DNA collection fee and to clarify the

---

[1] DNA refers to deoxyribonucleic acid.

[2] RAP 10.10.

[3] 191 Wn.2d 732, 747-49, 426 P.3d 714 (2018).

[4] LAWS OF 2018, ch. 269.

reference to "LAB" in the judgment and sentence. Clerk's Papers (CP) at 89. We otherwise affirm.

FACTS

On July 17, 2017, two individuals observed Gamet "engaged in a physical altercation on top of a female." CP at 1. When one of the two individuals approached Gamet and told him to get off of the woman, Gamet threatened that individual with a knife and pursued him.

The other individual called 911, and Gamet was arrested. After his arrest, the officers questioned Gamet. Gamet initially responded to the questions, but he eventually "began to ramble about things which did not make sense." CP at 2. The State charged Gamet with second degree assault.

The trial court referred Gamet for a competency evaluation. One of the examining doctors noted that Gamet had an extensive history of substance use.

The trial court found Gamet competent to stand trial. In order to avoid a third strike offense, Gamet, who had an extensive criminal history, pleaded guilty to an amended information charging him with two counts of criminal mischief.

The trial court sentenced Gamet in February 2018. During the plea colloquy, the trial court explained to Gamet that "if the [c]ourt should find that [he had] a chemical dependency that contributed to the offense, the [c]ourt then ha[d] the authority to require [him] to participate in a substance abuse treatment program." Report of Proceedings (RP) at 8. But the trial court never made such a finding.

The State and defense counsel requested a sentence of 12 months on each count, to run consecutively. Defense counsel commented that this sentence had been agreed upon "after lengthy

investigation into this case, as well as a lengthy mitigation report that was submitted to the prosecutor's office that documented Mr. Gamet's . . . mental health history, substance abuse, history, as well as he had a prior traumatic accident where a train hit him." RP at 13. Defense counsel further commented that Gamet "really wants to take advantage of programming that can be offered at the Department of Corrections, alcohol drug counseling and other counseling that he might qualify for." RP at 14.

In his colloquy with the trial court, Gamet stated that he would "follow the recommendation and to get into some of that programming" and would work on a release plan and structure so he could come out of prison with some benefit. RP at 14. The trial court commented, "I hope that you get that too," and adopted the joint sentencing recommendation. RP at 14.

The trial court found Gamet indigent and waived "any discretionary fines." RP at 15. But the trial court imposed a $500 crime victim assessment, a $100 DNA collection fee, and a $200 criminal filing fee.

In the judgment and sentence, the trial court did not require Gamet to undergo an evaluation for treatment for any condition. Nor did the court state that Gamet was required to undergo any drug testing or specific programming as part of Gamet's community custody. But, in the judgment and sentence, the trial court ordered Gamet to "comply with the following crime-related prohibitions: Maintain LAB," during his community custody. CP at 89. The court did not explain what it meant when it wrote that Gamet must "[m]aintain LAB."

Gamet appeals his LFOs and challenges some of his community custody conditions.

ANALYSIS

## I. LFOs

Gamet argues that under the 2018 amendments to the LFOs, the $200 criminal filing fee and the $100 DNA collection fee should be stricken. The State agrees that under *Ramirez*, the 2018 amendments to the LFO statutes apply and that remand is required for the court to strike the criminal filing fee and the DNA collection fee. We accept the State's concession and remand this case to the sentencing court to strike the criminal filing fee and the DNA collection fee.

## II. SAG

In his SAG, Gamet appears to claim that his trial counsel provided ineffective assistance of counsel by failing to advise him that he would be subject to drug urinalysis testing or other drug testing as part of his community custody. Because Gamet's conversations with his defense counsel are outside this record, we cannot address this claim. *State v. McFarland*, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Gamet also appears to claim that any requirement that he be subject to urinalysis testing or any other drug testing or any requirement that he engage in any programs related to drug treatment were improper because there is no evidence that his current offenses were drug related. Although during sentencing, Gamet mentioned his desire to engage in productive programming while in prison, the trial court did not order any drug treatment, testing, or programming, so this claim fails.

Gamet further contends that the requirement that he comply with other conditions "per [Community Corrections Officer]," is unconstitutionally vague. This claim also fails.

4

"[V]agueness challenges to conditions of community custody may be raised for the first time on appeal." *State v. Bahl*, 164 Wn.2d 739, 745, 193 P.3d 678 (2008). A sentencing condition is unconstitutionally vague if it "'(1) . . . does not define the [prohibited conduct] with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). When determining whether a sentencing condition is unconstitutionally vague, the "terms are not considered in a 'vacuum,' rather, they are considered in the context in which they are used." *Bahl*, 164 Wn.2d at 754 (quoting *Douglass*, 115 Wn.2d at 180).

Here, the trial court was required to impose as condition of community custody that Gamet "comply with any conditions imposed by the [D]epartment [of Corrections (DOC)] under RCW 9.94A.704." RCW 9.94A.703(1)(b). RCW 9.94A.704 defines the parameters of the DOC's supervision during community custody, so the DOC's and the community corrections officer's discretion is not unfettered. Whether the conditions ultimately imposed by the DOC are vague will, however, depend on what those conditions are. Because our record does not reveal what those conditions are, we cannot address this vagueness claim further.

Finally, Gamet contends that the requirement that he "[m]aintain LAB" is too vague because he does not know what it means. SAG at 1, 4. On remand to strike the criminal filing fee and the DNA collection fee, the court should clarify the reference to "LAB."

No. 51769-8-II

Accordingly, we remand this case to the sentencing court to strike the criminal filing fee and the DNA collection fee and to clarify the reference to "LAB" and to amend the judgment and sentence accordingly. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, P.J.

We concur:

GLASGOW, J.

CRUSER, J.